## YOUNG vs. DUMAS.

[CREDITORS' BILL TO SET ASIDE CONVEYANCE AS FRAUDULENT.]

1. *Validity of conveyance by debtor to* bona-fide *creditor.*—A debtor, in failing circumstances, may sell and convey his property, at an adequate price, to a *bona-fide* creditor, even though the known effect of such sale and conveyance may be to delay or defeat his other creditors; and neither the fact that the conveyance embraces all of his property that is subject to levy and sale under legal process, nor the fact that the grantee, immediately afterwards, conveyed the property by deed of gift, to the debtor's wife, who was his daughter, nor these facts combined, are sufficient to set aside the transaction in equity, as fraudulent against the other creditors.

APPEAL from the Chancery Court of Shelby.
Heard before the Hon. JAMES B. CLARK.

ON the 26th February, 1857, Benjamin F. Dumas, being in failing circumstances, sold and conveyed to John Horn, who was his father-in-law, several parcels of land in Shelby county, containing in all more than twelve hundred acres; and, at or about the same time, also sold to said Horn all of his personal property, except that which was exempt from levy and sale under legal process. The consideration recited in the deed for the land was the sum of $3,588 23, in hand paid; and the deed was duly proved and recorded. Immediately after the execution of this deed, and on the same day, said Horn conveyed the land, by deed of gift, in consideration of natural love and affection, either to David N. McClanahan, in trust for the sole and separate use of Mrs. Dumas, (as the bill alleged, and the answer admitted,) or

(as shown by the deed itself, a copy of which was made an exhibit to the bill) directly to Mrs. Dumas, for her sole and separate use; and, on the 28th February, 1857, conveyed to her all the personal property, by deed of gift, for her sole and separate use. In March, 1857, several judgments were rendered by the circuit court of Shelby against said Dumas, in favor of E. H. Young, W. S. Mudd, and others, amounting in the aggregate to about fifteen hundred dollars. Executions were regularly issued on these judgments, all of which were returned "no property found," except one which was paid by John N. McClanahan, who, as surety for said Dumas, was a defendant in the judgment. Dumas died in August, 1857; letters of administration on his estate were granted to John W. McRae, and the estate was reported and declared insolvent.

On the 15th July, 1858, the several judgment creditors filed their bill in equity, against the widow and administrator of said Dumas, alleging that the several conveyances above mentioned were fraudulent and void as against them, and praying that the property might be subjected to the payment of their debts; and John N. McClanahan, claiming to be subrogated to the rights of the creditor whose judgment he had paid, joined with them as one of the complainants. Mrs. Dumas answered, denying the charges and allegations of fraud in the several transactions between her deceased husband and her father, and asserting the validity of the conveyances under which she claimed the property. Horn died before the filing of the bill, and his personal representative was not made a party to the suit. On final hearing, on pleadings and proof, the chancellor dismissed the bill; and his decree is now assigned as error.

S. LEIPER, for appellants.

BYRD & MORGAN, contra.

STONE, J.—The testimony in this record convinces us, that the three notes from Mr. Dumas to Mr. Horn were given to secure debts actually due and owing from the former to the latter. There is no averment, or proof, that the property was sold for an inadequate price. The rela-

tionship of Mr. Dumas to Mr. Horn, and the gift of the
entire property by Mr. Horn to his daughter, Mrs. Dumas,
immediately after he had purchased it from Mr. Dumas,
while they should stimulate our scrutiny of the transaction,
are not enough, of themselves, to mark the conveyance as
fraudulent. Mr. Horn had the clear right to collect his de-
mand, which we have seen was just, from his son-in-law,
Mr. Dumas; and after he thus became the owner of the
property, his right to give that property to the sole and
exclusive use of his daughter, Mrs. Dumas, can not be suc-
cessfully controverted by the creditors of Mr. Dumas. As
to them, the gift was harmless. That the effect may have
been to delay, and, possibly, defeat all other creditors in
the collection of their demands, can not, of itself, avoid the
sale.

The only other feature of this case which we need notice,
is the fact that, while' Mr. Dumas seems to have sold
to Mr. Horn his entire property which was subject to levy
and sale, both parties, by agreement, left out of the con-
veyance such property as the law exempted from execution
for the use of Mr. Dumas' family. This they had the right
to do. In *Walthall v. Rives, Battle & Co.*, (34 Ala. 96,) we
said, " Neither the recital that there are sundry judgments,
which have acquired a lien upon the property, and which
the grantor has no desire to avoid, nor the exception from
the mortgage of the property exempt from execution, is
sufficient to sustain the imputation of fraud.     *     *     *
Outside creditors can not be prejudiced by the exclusion of
property which the law places beyond their reach."

We do not deny that the circumstances of this case are
somewhat indicative of fraudulent intent; but, viewed in
connection with the proof of the debts to Mr. Horn, and
the absence of all pretense that the property was sold at
an under value, they are not enough to invalidate the trans-
action. A *bona-fide* creditor may, by fair contract, purchase
and receive the effects of his debtor in payment of such
debt, even though the known effect may be to hinder or
defeat his other creditors.

Decree of the chancellor affirmed.