# Marshall *v.* Croom.

*Bill in Equity by Creditors, to set aside Conveyances as Fraudulent.*

1. *Issue at law.*—When a question of fact arising in a chancery cause, as of fraud *vel non* in the execution of a deed, is submitted by the chancellor to the decision of a jury, he is not concluded by their verdict; and although he may approve it, and make it the basis of his decree, this court will not be controlled by it, when satisfied from the record that the jury did not arrive at a correct conclusion—that the verdict was formed under a misapprehension of the pleadings, or that it is plainly opposed to the evidence, when considered in connection with the pleadings.

2. *Judgment, as proof of debt.*—A judgment against the grantor is not evidence, as against a prior grantee, of the time when the debt was contracted on which the judgment is founded,

3. *Validity of conveyance by insolvent debtor, to near relative.*—A conveyance by an insolvent debtor, against whom suits are pending, to a son, or other near relative, in form a deed of bargain and sale, and reciting the payment of a valuable consideration, will be closely scrutinized at the instance of his creditors, but it is not necessarily fraudulent; and though executed with a fraudulent intent on the part of the grantor, it will not be set aside as fraudulent and void, unless the grantee had knowledge of such fraudulent intent, and participated in it.

4. *Same.*—In this case, an insolvent debtor, while suits were pending against him, conveyed all his property to his son and daughter, by three separate deeds, all executed within a period of a few months, and reciting the payment of a valuable consideration; and it not being shown that any of the purchase-money was applied in payment of his debts, it was *held*, that the conveyances were executed by him with intent to hinder, delay, and defraud his creditors; but, as against the daughter, who denied all charges of fraud, and all knowledge of her father's indebtedness, no proof of such indebtedness being adduced, the conveyance to her was held valid; while the conveyance to the son, who also denied all the charges of fraud, but admitted the indebtedness and his own knowledge thereof, and failed to explain satisfactorily how he acquired the purchase-money alleged to have been paid, and other suspicious facts connected with the payment, was set aside as fraudulent.

5. *Same; rents and profits, as against fraudulent grantee.*—When a fraudulent grantee holds the property conveyed to him under a secret trust for the benefit of the grantor, he is responsible to creditors for rents and profits during his possession; but this principle does not apply, where the fraudulent conveyance, which is set aside at the suit of judgment creditors, was intended to vest the beneficial use of the property in the grantee.

[Marshall v. Croom.]

APPEAL from the Chancery Court of Sumter.

Heard before the Hon. A. W. DILLARD.

The bill in this case was filed on the 31st July, 1872, by Stephens Croom and others, judgment creditors of Matthew A. Marshall, against the said Matthew A. Marshall, and James B. Marshall and Mrs. Augusta M. Gere, who were his son and daughter; and sought to set aside three deeds, by which said Matthew A. Marshall conveyed substantially all his property to his said son and daughter, on the ground that they were executed with intent to hinder, delay, and defraud the creditors of the grantor. The complainants' judgments, five in number, were rendered on different days, between the 13th October, 1871, and the 25th April, 1872, and amounted in the aggregate to more than $7,200; and executions on them had been regularly issued, and returned "No property found," before the bill was filed. The first deed to Mrs. Gere was dated the 14th May, 1867, conveyed a tract of land containing eighteen hundred and fifty acres, and recited as its consideration the payment of $2,500. The second deed to her was dated the 5th October, 1867, conveyed several lots in the town of Gaston, Sumter county, including the grantor's residence, and recited as its consideration the payment of $1,000. The deed to James B. Marshall was dated the 30th March, 1867, conveyed a tract of land containing ten hundred and eighty acres, and recited as its consideration the payment of $1,250. All of the deeds contained full covenants of warranty, and were acknowledged by the grantor and his wife, before a justice of the peace, on or about the day of their respective dates; but they were not filed for record until after the lapse of more than a year—the deeds to Mrs. Gere on the 21st February, 1868, and the deed to James B. Marshall on the 6th October, 1870.

The cause having been submitted to the chancellor for a hearing on bill and answer, he held the deeds fraudulent and void, and rendered a decree for the complainants; but his decree was reversed by this court on appeal, at its January term, 1875, and the cause was remanded. After the remandment of the cause, a great deal of testimony was taken by both parties, bearing on the question of fraud; and the cause being again submited to the chancellor, on pleadings and proof, he ordered a jury to be summoned, and submitted to them the question of fraud *vel non* in the execution of the deeds. The trial being had before the chancellor himself, the verdict of the jury was, that the several deeds were executed with fraudulent intent on the part of the grantor, and that the grantees participated in such fraudulent intent. The chancellor approved the verdict, and rendered a decree for

[Marshall v. Croom.]

the complainants; declaring the deeds fraudulent and void, ordering a sale of the property for the satisfaction of the complainants' judgments, and directing an account to be taken of the rents, income, and profits of the property, during the possession of the grantees respectively. From this decree the defendants now appeal, and they jointly assign it as error.

R. H. & G. L. Smith, with Thos. Cobbs, for appellants, discussed and analyzed the evidence, and contended that it was not sufficient to overcome the sworn denials of the answers. They cited and relied on the former decision rendered in this case, 52 Ala. 554-6, and the case of *Tompkins v. Nichols & Jamison*, 53 Ala. 197-201.

Snedecor & Cockrell, with James Cobbs, *contra*.—The pleadings and proof establish a concurrence of all the suspicious circumstances which are regarded as badges of fraud, and which are usually found attending the execution of fraudulent conveyances. The grantor was largely indebted, in fact insolvent, and suits were pending against him. The grantees were his children, and lived under the same roof with him. That they had knowledge of his pecuniary condition, notwithstanding their denials, is shown by a preponderance of the testimony. The deeds conveyed all of the grantor's property, and placed everything beyond the reach of his creditors at law; and notwithstanding his alleged desire to pay his debts, there is an utter failure to prove payment of a single debt. The recited consideration was grossly inadequate. The growing crop and the stock, which passed with the land to Mrs. Gere, were worth at least the full amount of the purchase-money. There was no outward change in the possession of the property, or in the relations of the parties. No change of occupation or residence was contemplated by the grantor, nor was the sale demanded by the infirmities of age : on the contrary, he continued to superintend and carry on all the business of the plantation, professedly as overseer for his daughter. The evidence shows, by a decided preponderance, that neither of the grantees had the means to make the alleged payments; and the payments were attended with suspicious circumstances. The question of fraud was fairly submitted to the jury, and this court will not disturb their verdict. The following authorities are relied on : *Clark v. Wise*, 39 How. Pr. N. Y. 97 ; *Walcott v. Olney*, 6 McLean, 23 ; *Atwood v. Impson*, 20 N. J. Eq. 150 ; 32 Illinois, 150 ; *Gibson v. Hill*, 23 Texas, 77 ; *Winchester v. Reid*, 8 Jones' Law, N. C. 377 ; *Haney v. Nugent*, 13

[Marshall v. Croom.]

Wisc. 282 ; *Owen v. Arvis,* 2 Dutch. N. J. 22 ; *Black v. Cald-well,* 4 Jones' Law, 150.

STONE, J.—When this case was before in this court, it had been submitted without evidence. It was decided here on the pleadings alone. The object of the bill was to set aside three conveyances, made by M. A. Marshall in 1867 ; two to his daughter, Mrs. Gere, and one to his son, J. B. Marshall. The bill was filed by creditors, whose claims were alleged to be older than the conveyances, and it charged that their said claims were reduced to judgment in 1871 and 1872 ; that the lands were sold at a grossly inadequate price ; that no money was in fact paid for the property, but that the conveyances were covinous, and made with intent to delay, hinder, and defraud the creditors of M. A. Marshall. The bill charged, also, that the said conveyances were received by the grantees with like intent to delay, hinder, and defraud the creditors of the grantor ; but, while the bill is very full in charging fraud and covin in these conveyances and other dealings, it no where charges that the grantees, when they received the deeds, had knowledge, or notice, that their father was indebted at the time. Neither does it charge that the grantees, at the time they received the conveyances, had knowledge that the intent of the grantor was to delay, hinder, and defraud his creditors, unless that charge be implied in the averments above referred to. The burden of the bill is, that M. A. Marshall owed complainants, and was indebted to insolvency ; that he conveyed the bulk of his property to his children, on a recited consideration that was grossly inadequate ; that nothing was in fact paid ; and that this was done on the part of each, with intent to delay, hinder, and defraud the creditors of M. A. Marshall. Sworn answers were required from the defendants, and they did so answer.

In the opinion of this court it was said : " The charges of fraud, made in the bill, are direct and specific ; and the interrogatories founded thereon, for a discovery, are of a thorough and most searching character. All the charges of fraud, and the interrogatories propounded to each defendant, are fully answered, and each one denies all the allegations imputing fraud ; and the answers are strictly responsive." In another place it was said : " It is certainly true that the answers, in the case before us, disclose facts and circumstances, connected with the conveyances attacked, which are, in contemplation of law, badges of fraud ; but they are not proof sufficiently conclusive of it to overturn the sworn denials of the answers ; especially when the complainants

have made the answers their own testimony." And, so, this court held that, on the pleadings alone, the charge of fraud was not established.—*Marshall v. Croom*, 52 Ala. 554.

When the case returned to the court below, evidence was taken ; and the cause was again submitted for decree, on pleadings and testimony. The chancellor had a jury summoned and impanneled to try the issue of fraud *vel non* ; and the jury by their verdict found that each of the three deeds assailed was made with intent to delay, hinder, and defraud the creditors of M. A. Marshall ; and the decree of the court was rendered in pursuance of the verdict. It is here contended that, in charging the jury, the chancellor fell into errors, which renders it improper that we should accord to the verdict any weight, in determining the question of fraud charged in the bill.

Issues at law, in cases like the present, are directed, as one means of satisfying the conscience of the chancellor. They rest in the sound discretion of the court in which the cause is pending ; and it is not an error which will avail the party aggrieved, either to grant or refuse them. In the matter of the relevancy and legality of evidence, and the principles of law laid down for the guidance of the jury, the same rules obtain as in jury trials in proceedings at law. Here the analogy stops. Unlike trials at law, questions of evidence, or of law, as presented in the charge, can not, as mere legal propositions, be the grounds of reversal in this court. The chancellor is not concluded by such findings, but may decree in opposition to it ; may set it aside, award a *venire de novo*, or take the trial of the facts into his own hands, notwithstanding the verdict.—*Atwood v. Smith*, 11 Ala. 894 ; *Alexander v. Alexander*, 5 Ala. 517 ; *Dabbs v. Dabbs*, 27 Ala. 646 ; *Anon.*, 35 Ala. 256 ; Code of 1876, § 3890, *et seq.* If an issue out of chancery, submitted to, and passed on by a jury, be so presented, as that it does not aid us in arriving at a correct conclusion ; or, if it was presented in such manner as to convince us that it was done in a misapprehension of the pleadings ; or, if the testimony, in view of the pleadings, is plainly insufficient to support the verdict, then, it would be our duty not to be controlled by such verdict, but to look for other principles on which to rest our decision.

We have stated, above, the general substance and object of the bill. The first five sections charge the date and amount of the several judgments recovered by complainants against M. A. Marshall ; some of them being in October, 1871, and the other in April, 1872. The sixth section of the bill charges, that "the causes of action upon which the fore-

going judgments against the said Matthew A. Marshall were severally rendered against him, were valid and *bona fide* subsisting claims against him, on and before January 1st, 1861, and continuously from said last date have been, and are now valid, *bona fide* subsisting claims against said Marshall." The bill then alleges the issue of executions on said judgments, and return thereon "No property found." Section seven avers, that said M. A. Marshall owned the lands sought to be condemned, on 1st January, 1861, and ever afterwards owned the same. The two deeds to Mrs. Gere bear date, severally, May 14th, and October 5th, 1867. The deed to J. B. Marshall bears date March 30th, 1867. The charge of fraud against Mrs. Augusta Gere is as follows : " That no money was in fact paid by the said Augusta to her father, at, or upon, or in consideration of the said conveyances, as is fraudulently recited in said deeds; that the respective considerations recited in said deeds are, each of them, enormously disproportionate, and shockingly inadequate to the value and quantity of the property severally conveyed therein ; that, in point of fact, said Augusta had no money, or property, wherewith to make said purchase ; and that the said deeds were executed by said Marshall, and received by the said Augusta, for the purpose of hindering, delaying, and defrauding the creditors of the said Marshall." Substantially the same averment is made as to the deed to James B. Marshall.

It will be observed, that section six of the bill is the one which charges that the debts of complainants dated back to 1861. In Mrs. Gere's answer is the following clause : "That in answer to paragraphs 1, 2, 3, 4, 5, 6, she knows nothing of the matters therein contained, and can not admit or deny the allegations contained." The answer of J. B. Marshall is as follows: "This defendant, in answer to paragraphs numbered 1, 2, 3, 4, 5, 6, says that he does not know whether said allegations are true or not, but he believes they are true, and he therefore admits them." It is thus shown that Mrs. Gere professed ignorance, and therefore did not admit the averments in section six of the bill, the only section which charges that the debts were contracted as early as 1861, and in fact the only section which charges *when* the debts were contracted.. Her answer is very full, and denies with particularity every fact and circumstance charged, tending to show fraud in her purchase ; denies that the conveyances were made without consideration ; and answers and pleads that she paid the recited consideration in full, at the times the deeds bear date, and that such consideration was the full value of the property conveyed. In her answer, she further

[Marshall v. Croom.]

"avers, that at, or before, the respective times of the execution of the said deeds by the said M. A. Marshall to this defendant, and of the payment of said purchase-money, she, this defendant, had no notice whatever of the claim or claims of the said complainants now claimed, or of any incumbrance whatever that in any wise affected the said premises, so purchased by this defendant, or any part thereof." In answer to the charge that the money, with which she paid for the lands, came to her from her father, she says: "Said money came, neither directly nor indirectly, to me from my father, but was the proceeds of my labor and management, in the way I have stated." She had before stated, that she had cotton, and she explained how she came by it. Thirty-four bales of this cotton, she said, she had sold for about four thousand dollars. With this money, she said, she had paid for the lands she had purchased from her father; the gross purchase amounting to thirty-five hundred dollars. She denied that the lands were worth more than this sum.

We deem it unnecessary, in this case, to present or collate either the pleadings or evidence, in determining the question of Matthew A. Marshall's intent in making the several conveyances to his children. That he was largely insolvent, all through the year 1867, is fully shown; and many acts of his, including an entire failure to prove that he applied to the payment of his debts any of the money he received from the sale of his property, leave this transaction in so questionable a shape, that we do not hesitate to pronounce that the several deeds were made with intent, on his part, to delay, hinder, and defraud his creditors. He knew the extent of his indebtedness, was being sued on some of his debts, and must have expected other suits. Yet, under the version of the facts most favorable to him, he disposed, in a few months, and at an unusual season of the year, of all his available property; and we are not able to trace one dollar, of some five thousand dollars received by him, to the payment of his debts. True, he says, in his sworn answer, that he applied some of the money to the payment of his debts; and he mentions Judge Reavis, as the only creditor remembered, to whom he made payment. He exhibits with his answer cancelled notes, payable to Reavis; but they show they were cancelled long before he made the sales in 1867. In view of the pleadings and evidence, we do not hesitate to pronounce that M. A. Marshall's intent in making the deeds was fraudulent.

The alleged sales were made to near relatives—a daughter and a son; and in such case, both law and reason require that we should scrutinize the transaction narrowly.—*Overton*

*v. Morris,* 3 Por. 249 ; *Anderson v. Hooks,* 9 Ala. 704 ; *High v. Nelms,* 14 Ala. 350 ; *Young v. Dumas,* 39 Ala. 60 ; *Hubbard v. Allen,* at the present term.    But it does not follow, that all sales to relations are therefore fraudulent.    We have shown, above, that Mrs. Gere, in her answer, fully negatives every charge in the bill, which assails her title.    Her answer is very full, and meets and negatives every phase of fact, on which relief is claimed ; and the answer being responsive to the bill and interrogatories, and being sworn to, in obedience to the foot-note, this casts on the complainant the necessity of overcoming the denials of the answer by two witnesses, ·or one with corroboration.

We said, above, that Mrs. Gere expressed ignorance, and did not admit the truth, of section six of the bill, which averred that complainants' claims dated back to 1861.    This imposed on the complainants the necessity of proving that averment of their bill, if necessary.    They produced in evidence the record of their recoveries in the fall of 1871, and in the spring of 1872 ; and they offered no other direct evidence of their demands, or of the time when they were contracted.    These records are not proof, against Mrs. Gere, that the debts existed before the date of the judgments—1871 and 1872 ; four or five years after the deeds were made to her.— *McCaskle v. Amarine,* 12 Ala. 17 ; *Goodgame v. Cole,* 12 Ala. 77 ; *Simerson v. Br. Bank at Decatur,* 12 Ala. 205.

The only other evidence found in the record, tending to show the existence of the debts, and Mrs. Gere's knowledge of them, is furnished in the deposition of J. E. Westcott, a witness for complainants.    All he says on the subject is embodied in the following extracts : " I don't know whether Mrs. Gere or J. B. Marshall knew the extent of their father's indebtedness or not.    I don't now recollect hearing ·them speak of any indebtedness, except as to a debt due C. R. Labuzan and myself.    .    .    I don't know what means she " [Mrs. Gere] " had of knowing about her father's business, and property, plate, &c., other than any child would have who was living with its parents.    Don't know whether they talked over these matters or not.    I don't recollect having any conversation with her about these matters.    .    .    I never heard him " [J. B. Marshall] " say any thing about his father's debts.    .    .    I did not say that either James B. Marshall or A. M. Croom " [Mrs. Gere] " knew of M. A. Marshall's indebtedness.    Have said I never heard them speak of his debts, except a debt due C. R. Labuzan and myself. I can not state that they knew the extent of his indebtedness. I did not know that they knew he was in debt more than he could pay.    I think M. A. Marshall was a silent, reserved

[Marshall v. Croom.]

man, with reference to his own matters. . . I can not
state that Mrs. Gere knew about the business affairs of M. A.
Marshall. I don't recollect having any conversation with
her about these matters."

It is difficult to understand precisely what this witness
means. He testified many years after 1867 ; and if he in-
tends to be understood as affirming that he had a conversa-
tion with Mrs. Gere, he gives no date of its occurrence. He
twice speaks of *a debt* due to Labuzan and himself. Unex-
plained, this would seem to imply that the debt was due to
them jointly. Yet the record no where shows there was
such debt, or that there was any debt due to the witness.
But, giving due weight to all the various expressions, we
can not say that the witness intended to affirm, as fact, that
he had had such conversation with Mrs. Gere. This testi-
mony is too weak and indeterminate to overcome the denials
in the answer, and to meet the requirements of the law.

The testimony very fully shows that Mrs. Gere had money
sufficient to make the purchase ; that she also had fine busi-
ness qualifications, and ample credit, and that she actually
paid the cash when the deeds were executed. There is no
attempt to prove the property was sold below its market
value. There is a failure to prove, as against her, that the
debts of Mr. Marshall existed, until four years after she
made her purchases ; and from this standpoint, there is an
entire absence of proof, or presumption, that the convey-
ances to her were made with intent to delay, hinder, or de-
fraud the creditors of M. A. Marshall. Whether there was
a consideration from her or not, was immaterial under the
facts of this case, unless the record contained evidence,
which it does not, that the conveyances were made in *actual
fraud*, and that Mrs. Gere participated therein ; namely, that
they were made *with intent* to defraud some creditor then
existing, or afterward to be contracted with. The conse-
quence is, that Mrs. Gere's title to the property purchased
by her is unquestioned, under the facts shown in this record.
2 Brick. Dig. 18, § 71.

We have shown, above, that J. B. Marshall, in his an-
swer, admitted the truth of the first six sections of the bill.
This is an admission that the debts, sought to be enforced
in this suit, existed on and before January 1st, 1861. J. B.
Marshall, when he made his purchase, March 30, 1867, was
under twenty-two years of age. He had been out of the
army less than two years. He does not deny that he knew
of his father's debts, embarrassment, and the suits against
him. In his answer, " he denies that any fraudulent or cov-
inous assignments were made to him. On the contrary, he
(9)

insists, that the conveyance made to him was made in good faith, and for valuable consideration, and that the said deed recites the true consideration. . . The consideration, upon which the conveyance inquired of was made, was twelve hundred and fifty dollars. I paid five hundred dollars in cash, March 30, 1867, and gave a draft on Messrs. B. & T. due 1st November, 1867, for $750, which the said Matthew A. Marshall did not present, at my request, as I was already indebted to the said firm, and wanted him to wait and see what prospect I had for a good crop, before presenting the draft for acceptance. Finding I was not making a good crop, I paid him with two notes on Henry Gordon, amounting to $575, and executed my own note for one hundred and seventy-five dollars, and took up draft. I afterwards paid him the note. I made said money in my business transactions during the two preceding years. I was engaged in business in Gaston, from the summer of 1865, and until the spring of 1867. I realized money by sales, and I at times borrowed money, and repaid it. I also bought and sold cotton; and it is impossible for me to answer with more particularity than I have already answered. . . Prior to March 30, 1867, I lived in Gaston, Sumter county, Alabama. I was engaged in the family-grocery business, and in farming. I had about twenty-five hundred dollars, the proceeds of nine bales of cotton sold by C. R. Labuzan, at 53½ cents, in 1865. With that money I commenced my business."

The foregoing comprises all the more material parts of this defendant's answer, showing the terms of his purchase, and with what means he made it; and also all the material denials of fraud, so far as his purchase is concerned. It will be observed he offers no explanation, or attempt to show how he acquired the nine bales of cotton, soon after his return from the war, and before he was twenty-one years old. Neither does he attempt to show how he came by the notes on Gordon, amounting to $575. The witness Derby testified that he, "sometime in 1867—thinks it was after March—heard James B. Marshall speak of his father's affairs, stating that previous to that time he had advised his father to take the benefit of the bankrupt law; and that, if he had taken his advice, his affairs would have been in better condition." Seale, another witness, who was present when the deed to James B. Marshall was executed, testified as follows : "I do not recollect all that was said, but do recollect that M. A. Marshall said, when he delivered the deed to James B. Marshall, 'Now I want the money.'"

We have said, above, that transactions, such as this, should be narrowly scrutinized. We now add, that when a father

is shown to be indebted to insolvency—so much and manifestly so, that the son advises him to seek relief in the bankrupt law—yet conveys to that son a considerable tract of land, and there is a failure to show that the proceeds of the land, if sold, went to the debts of the father, the law and human reason distrust the *bona fides* of such transaction, if there be suspicious conduct; or, if any fact, necessary to a sale and conveyance in good faith, be left in doubt or confusion.

If the suspicious circumstances in this transaction, hereafter commented on, were fully explained, and if the payment of the purchase-money recited was satisfactorily established, there is not enough in the pleadings and evidence in the present record to justify us in finding that James B. Marshall, at the time he received the conveyance, knew his father executed it with intent to delay, hinder, and defraud his creditors.—*Andrews v. Jones*, 10 Ala. 400 ; 2 Brick. Dig. 18, § 70 ; *Anderson v. Hooks*, 9 Ala. 704 ; *Young v. Dumas*, 39 Ala. 60. But this transaction is marked by many unexplained and suspicious circumstances. The grantee had attained his majority less than a year before the conveyance was executed. There is no explanation attempted, showing how he became the owner of nine bales of cotton in 1865, when he was a minor, and had just returned from the army. His father's answer is not evidence for him. Neither he nor his father is examined as a witness. It is not shown whether his mercantile operations resulted in profit or loss. We suppose there could not have been much profit, as the business seems to have been discontinued after a short experiment. It is not shown how J. B. Marshall became owner of the notes on Gordon, nor whether the maker was solvent or insolvent. But the strangest and most inexplicable feature of the transaction is this : When the deed was delivered, M. A. Marshall, though dealing with his own son, demanded his money with noteworthy haste and emphasis. This betrayed a distrust of his son, and unwillingness to submit to delay. Yet, he parted with title to his land, by deed with covenants of warranty, and, without security of any kind, trusted his son for three-fifths of the purchase-money, to be paid seven or eight months afterwards. Nay, more ; he accepted, as evidence of this part of his son's indebtedness, his draft on his commission-merchants, with a promise not to present it for acceptance, until it could be ascertained whether his son would make a good crop. And when it was ascertained that the crop was not good, he received of his son, in payment of $575 of the $750, notes on Gorgon for that amount; and offers no evidence that those notes were available, or were ever collected. For the balance, he took his son's note,

which J. B. Marshall, in his answer, says he has paid, but does not say when. We might note other circumstances, but we consider these enough. They wear the marks of a gift, or simulated sale, rather than a real one ; and we hold that the lands conveyed to James B. Marshall are subject to the claim of complainants.—2 Brick. Dig. 23, §§ 122, 123, 124, 125 ; *Hamilton v. Blackwell*, and *Hubbard v. Allen*, at the present term ; *Venable v. U. S. Bank*, 2 Peters, 107 ; *Cummings & Cooper v. McCullough*, 5 Ala. 324.

The testimony taken before the register, on the first reference, is not noted on the note of the testimony, and we have not considered it.

Conveyances, deemed fraudulent in law, are sometimes made in secret trust for the benefit of the grantor. In such case, the grantee is intended to be the mere holder of the naked title, while the use and benefit are the grantor's. There is a fitness in holding such fraudulent grantee accountable to creditors for all income and profits held by him ; for it is the property of the insolvent debtor. This case is not shown to be of that class. We do not doubt that the title and beneficial use were intended to vest in James B. Marshall. The creditors, complainants in this suit, had and have no title to the property, and no such lien as draws to it a right to the possession, or to the income and profits. They have but a mere equitable lien, in the nature of an execution lien at law ; and it exists only by virtue of their bill filed. Its extent is, that creditors, thus instituting suit, thereby acquire a right to have the property sold in payment of their demands sued on, paramount to all after-accruing rights and liens.—*Dargan v. Waring*, 11 Ala. 988. Such lien confers no right to rents and profits.—*Bernheim v. Beer*, Sup. Ct. Miss., April term, 1868.

So far as the decree of the chancellor affects Mrs. Gere, and the property claimed by her, it is reversed, and the bill dismissed. Let one-half the costs in the court below be paid by complainants. So far as the decree holds J. B. Marshall accountable for rents and profits, it is reversed and annulled. To the extent it condemns the lands claimed by him to be sold in payment of the demands sued for, it is affirmed. Let half the costs in the court below be paid by James B. Marshall ; and in case it can not be made out of him, then let it be paid out of the proceeds of the lands conveyed to him, and hereby ordered to be sold. Let the costs of this appeal, in this court, and in the court below, be paid, three-fourths by appellees, and one-fourth by James B. Marshall and his sureties. Executions to be issued for the above costs, if not paid without.