[Dickson et al. v. McLarney et al.].

# Dickson et al. *v.* McLarney et al.

*Bill to Set Aside Fraudulent Conveyance.*

1. *Actual fraud avoids a conveyance as to subsequent creditors.*—A conveyance tainted with actual fraud is void as to subsequent creditors.

2. *Badges of fraud.*—When a conveyance from a son to his mother is attacked by subsequent creditors for fraud and it appears that the recited consideration of five thousand dollars was untrue; that the deed was voluntary; that it was not recorded for more than two years after its execution; the grantee meantime obtaining credit, extending his business and contracting large indebtedness; that while the deed was withheld from record, there was a suit by creditors of the mother to subject the land to the payment of her debts in which she and the son claimed that the land belonged to the latter, the conveyance is properly declared void as against subsequent creditors.

3. *Executor may sue individually on contract made with him in his representative character.*—If an executor has been charged with, or accounted for the proceeds of contracts made with him in his representative character; or if a claim grows out of his unauthorized disposition of the assets of the estate for which he is liable, he may sue individually on such claim.

4. *Confidential communication to attorney protected.*—After the relation of attorney and client is shown to have existed, the attorney cannot disclose what passed between himself and his client regarding the case and its defense, unless the privilege is waived by the latter.

APPEAL from Mobile Chancery Court.

Heard before Hon. W. H. TAYLOE.

This bill was filed February 15, 1890, by Frank H. Mc-Larney, "executor" of the estate of James McDonnell, deceased, and Kate McDonnell, "executrix" of said estate, against Edward J. Dickson, alias Daws, and the children and heirs of Mrs. Mary Daws, and the object of it is to have a certain deed to real estate, executed by said Edward J. Dickson to Mrs. Mary A. Daws,—who was his mother,—on the 3rd day of May, 1887, declared void as to complainants, on the ground that it was voluntary, and made to hinder, delay and defraud the creditors of said Dickson.

Among other things, it is stated in the bill, that on the

21st of March, 1887, Mrs. Daws was in possession, and claiming to own certain valuable real estate in Mobile county; that at, and before that date, she was indebted to said Dickson, her son, in a sum exceeding $5,000, and had no other means, besides this property, with which to pay him; that said Dickson, who was commonly called Daws, was, at that time, a member of the firm of Daws & Bogue, carrying on a small retail grocery business in Mobile; that Dickson contemplated opening and conducting a branch store, to be run upon a small scale; that he was a single man, and lived with, and aided in supporting his mother, Mrs. Daws, and her family, and while willing to continue to do so, insisted upon her conveying to him said real estate, in payment of her indebtedness to him, which would give him better credit; and, accordingly, on the 21 March, 1887, she conveyed him said property in payment of her indebtedness to him, which deed was recorded in the probate office, on the 31 March, 1887.

It is further averred, that on the 3rd of May, 1887, before said Dickson established his new business, and in order that he might put his property, conveyed to him by his mother, out of reach of liability for any debts he might thereafter create in his new business, then contemplated, and without any valuable consideration whatever, but with a recited consideration of $5,000, he executed a deed to all of said property to Mrs. Daws, with the understanding and agreement, that she should re-convey it to him, whenever he desired her to do so, and if no such re-conveyance should be made during her lifetime, then at her death, the property should revert to him, through a will or other paper, or by the destruction of said deed unrecorded, and with the further understanding, that said deed should not be recorded until it became necessary to record it, to protect said Dickson from his creditors; that said deed was left with some other person, than the grantee, to be held until the death of Mrs. Daws, or until it became necessary to record the same, for his protection, and the deed was to be kept a secret; that the deed, pursuant to that agreement, was withheld from record, until the 15th day of June, 1889; that, meantime, said Dickson held himself out as the owner of said property, and Mrs. Daws acted in a way to induce the public to believe it was his; that, meantime, said Dickson while thus claiming said property, purchased a stock of goods from one Conrad Fisher, and commenced a branch business under the style of E. J. Daws, Agent; that the business belonged to Daws & Bogue, Bogue managing at the old stand, and Dick-

son at the new; that said Dickson began to buy a large stock of goods and to do a large business, and to pay monthly, only a part of his indebtedness, and in about six months, ran up an indebtedness of about $10,000, with very small assets to represent it; that he did not apply the proceeds of his business to paying his debts, kept irregular and imperfect books, drew out of the business and fraudulently converted and disposed of money realized therefrom, and placed it out of the reach of creditors, and after he had done this, on the 15 June, 1889, he caused said deed to be recorded, so as to hinder, delay and defraud his creditors in the collection of their debts against him; that his partner, Bogue, became dissatisfied, and dissolved the partnership, Dickson buying him out and assuming all the debts; that the creditors believing that Dickson owned this real estate, and was solvent, released Bogue and allowed Dickson to assume their debts; that prior to the commencement of the business, under the style of E. J. Daws, Agent, said firm of Daws & Bogue dealt with complainants, who were carrying on a wholesale grocery business in Mobile, Alabama, and had paid with comparative promptness the debts created, and complainants sold goods to E. J. Daws, Agent; that these sales were made in the usual course of business, from August 1, 1888, to November, 1889, but said Dickson only paid from time to time a part of the debts created, and never, after Dec. 1, 1888, reduced his indebtedness to complainants below the sum of $943.23, and from March 1, 1889, to Nov. 1, 1889, he continually increased this indebtedness, up to Nov. 1, 1889, at which time, he owed complainants for goods purchased from them, the sum of $2,729.07, which is still due and unpaid; and that complainants did not know of the deed from Dickson to Mrs. Daws.

The bill further alleges, as facts tending to show the fraudulent intent of said Dickson and Mrs. Daws, in the execution of said deed by him to her, on the 3rd day of May, 1887, and as illustrative of their fraudulent conduct, and particularly of the fraudulent design of said Dickson, in executing said deed, that on the 2nd of August, 1888, John Croft and others, composing the firm of Croft & Co. filed a bill in the Chancery Court of Mobile county against Mary A. Daws and E. J. Dickson, alleging that prior to, and on the 21 March, 1887, the said Mary A. was indebted to Croft & Co., and that she had, without any consideration therefor, and for the purpose of hindering, delaying and defrauding the said Croft & Co., and her other creditors, made said conveyance of that date to said Dickson, and prayed to have it

[Dickson et al. v. McLarney et al.]

set aside as fraudulent, and to condemn said property to the payment of the said debts of the said Mary A. Daws, to them; that said Mary A. answered the bill, denying that said conveyance was fraudulent and voluntary, stating that she had borrowed from said Dickson more than $5,000, to pay certain debts of hers, upon a promise to convey to him an amount of property sufficient to reimburse him; that she denied that there was any understanding or agreement between her and said Dickson, other than that he was to receive said property in payment of his debt; that she still lived on a piece of the property, but alleged her doing so, was a matter of favor to her by said Dickson, and under no contract whatever; that she did not mention or allude to the fact, that said property had been re-conveyed to her by said Dickson; that, on the same day she filed her answer, the 13 August, 1888, said Dickson filed his answer in said court, in said cause, stating he had read over the answer of Mary A. Daws, in the case, and that the same was true; that the testimony of said Dickson was taken in said cause, and he testified to the several facts set out in said answer, and, also, that the rents of said property, used by said Mary A. were given to her by him, and that she claimed the same only as a gift; that before his deposition was completed, and while it was being taken, he and Mrs. Daws compromised and settled their case with Croft & Co., without ever disclosing the existence of the conveyance by him to her.

The prayer is to set aside and annul the said conveyance as fraudulent, and for a sale of the property for the payment of the debt of complainant.

The answer denies any rights in complainants as executors to a decree in the cause for the debts the bill is filed to enforce, since their intestate died before they were created.

It sets up, that notwithstanding the deed of Mrs. Daws to Dickson, she remained in the actual possession of the property, occupying one piece of it, as a dwelling for herself and family, and collecting the rents from the tenants occupying the other parts of it, from the date of her deed to Dickson,—March 21, 1887,—to the 3rd of May, 1887, when he re-conveyed the property to her; that she executed said deed to him, not because he demanded it of her, for he had paid her bills and contributed to her support, up to the 21 March, 1887, under the declarations of his mother which made him believe that she "would return the money to him, sometime, in the nature of a devise or bequest out of said property, mentioned in said deed, and that with full faith and confidence in his said mother, the said Dickson did con-

[Dickson et al. v. McLarney et al.]

tribute to the support and maintenance of his mother, and paid her bills and delivered to her such money as she requested, up to the 21 March, 1887, but with no expectation of ever having it repaid to him; that his mother was indebted several hundred dollars to different creditors, prior to the execution of her deed to him, who were pressing payment, and threatening suit; she became alarmed, he could not advance her the money, to pay these claims, and in that state of excitement and apprehension, she executed said deed to him of her own volition, without any solicitation or persuasion whatever on his part, and he readily received it, at the request of his mother, knowing that he was as much entitled to the property as any one else; that thereafter, she began to brood over her act in the execution of said deed, became dissatisfied, complained of her impoverished condition, not having any property other than that she had conveyed to him, and thereupon implored and prevailed upon him to execute to her said deed of re-conveyance; that she continued in the use and occupation of said property all the while, from the time she conveyed it to him, without any change, collecting and applying the rents to her own use, without the consent or approbation of himself, and that complainants knew that she owned and occupied said property; that after he executed and delivered the deed to her, she returned it to him with instructions to record it, but he carried it to his store, and deposited it,—with the intent to have it recorded,—until the 2nd of August, 1888, at which time he delivered it to Mrs. Beatrix, by the directions of his mother.

The answer admits many of the allegations of the 8th section of the bill, as touching the Croft & Co. suit against Mrs. Daws, to set aside her deed to Dickson for fraud, denies that they "filed their respective answers in the manner stated in the bill;" admits that their attorneys filed answers for them, but denies that either one of them read over the answers, or that the answers were read to them, and avers that they did not know the contents of the answers.

The defendants further deny all allegations of fraud, and all the material averments of the bill stated therein for the purpose of showing fraud, or any purpose to hinder and delay their creditors.

The chancellor decreed that the deed was fraudulent and void, and set it aside and ordered that the property therein conveyed be subjected to the payment of the demand of the complainant.

[Dickson et al. v. McLarney et al.]

WM. E. RICHARDSON, for appellants, made the following points: That the executors could not maintain the suit. *Ikelheimer v. Chapman*, 32 Ala. 676; *Stallings v. Williams*, 6 Ala. 509; *Cox v. McKinney*, 32 Ala. 461; *Riddle v. Hill*, 51 Ala. 224; that the attorney could not testify as to confidential communications.—*Blount v. Strong*, 60 Ala. 572; *Hawes v. State*, 88 Ala. 37; *State v. Cotton*, 87 Ala. 75; that the record of the former suit was inadmissible: 1 Gr. Ev. 159; *Goodlett v. Davis*, 74 Ala. 220; *Long v. Davis*, 18 Ala. 801; that subsequent creditors were not injured by the conveyance: *Seals v. Robinson*, 75 Ala. 369; *Bank v. McDonnell*, 87 Ala. 736; *Tryon v. Flournoy*, 80 Ala. 321.

GREGORY L. & H. L. SMITH, for appellees, insisted that complainants could maintain the bill, citing *Arrington v. Hair*, 19 Ala. 243; *Curry & Co. v. Paine*, 3 Ala. 154; *Tate v. Shackelford*, 24 Ala. 510; *Agee v. Williams*, 27 Ala. 644; that actual fraud vitiates a conveyance as to subsequent creditors: *Lehman v. Van Winkle*, 8 So. Rep. 870; *Huggins, v. Perrine*, 30 Ala. 396; *Lawson v. Ala. Warehouse*, 73 Ala. 289; *Costillo v. Thompson*, 9 Ala. 937; *Pulliam v. Newberry*, 41 Ala. 172; that concealing the deed was a fraud: *Sims v. Gaines*, 64 Ala. 392; *Pope v. Wilson*, 7 Ala. 694; *Wiley v. Knight*, 27 Ala. 336. Briefs for both parties are very elaborate and only a synopsis of the main points are given.

HARALSON, J.—I. The deed which is the subject of this suit, is alleged in the bill, to be a voluntary conveyance, and made to hinder, delay and defraud the creditors of E. J. Dickson.

The defendants admit it to be a voluntary conveyance, but deny, it was executed with any such fradulent intent, as that charged.

It is necessary to repeat, in this connection, and for the purposes of this decision, some familiar principles, as to such transactions.

A conveyance which is purely voluntary, and not tainted with an actual intent to hinder, delay and defraud creditors, is void, only as to existing creditors, but when tainted with actual fraud, it is void as to subsequent, as well as to existing creditors: *Seals v. Robinson*, 75 Ala. 364; *Higgins v. Perrine*, 30 Ala. 396.

The right of subsequent creditors, therefore, depends upon the existence of actual fraud in the transaction, and the burden of proving it, rests upon complainants.—*Seale v. Robinson, supra,*

Vol. 97.

[Dickson et al. v. McLarney et al.]

If it is true, that the deed from said Dickson to his mother, was both voluntary and fraudulent, it could avail the defendants nothing, if it were shown, that Mrs. Daws did not participate in the fraud with Dickson, for it is unnecessary to aver or prove, that a voluntary grantee participated in the fraud of his grantor, in making a voluntary conveyance.—*McGhee v. T. Nat. Bank*, 93 Ala. 196 ; *Pickett v. Pipkin*, 64 Ala. 524. Nor is it necessary to aver and show, the insolvency of the fraudulent grantor.—*Carter Bros. v. Coleman*, 82 Ala. 181–2 ; *Lehman v. Meyer*, 67 Ala. 397.

The mere fact that one fails to record a conveyance, is not evidence, of itself, of a vicious intent, and where a failure to record is consistent with good intentions, the law will attribute no bad motive to the grantee in the deed, from such failure ; but, where a deed is designedly withheld from record, for the purpose of maintaining credit, which the record of the instrument would impair, it is fraudulent and void, as against subsequent purchasers and creditors. *Lehman, Durr & Co. v. Van Winkle*, 92 Ala. 443 ; *Mobile S. B'k v. McDonnell*, 87 Ala. 736.

II. The defendant, Dickson, was the son of Mrs. Daws, and while transactions between near relations, as we have often said, are legitimate, and not to be held in suspicion, on that account, where there are no circumstances to arouse suspicions of their fairness, yet, where such circumstances do exist, courts, at the instance of creditors, will closely scrutinize their dealings.—*Marshall v. Croom*, 60 Ala. 121.

Do circumstances of suspicion surround the execution of said deed, between these persons?

It is admitted by the defendants, that this deed was voluntary, that Mrs. Daws paid nothing for it, and yet we find the recital, that it was made in consideration of "the sum of five thousand dollars, ($5,000) lawful money of the United States of America, to him (Dickson) in hand paid, by said party of the second part, (Mrs. Daws), at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, and the said party of the second part, her heirs, executors and administrators, forever released and discharged from the same." The very pertinent question forces itself, in this connection, Why should a grantor, who was perfectly solvent, as this one claims to have been, who had no occasion to fear he would arouse suspicions as to his solvency, in doing a generosity to his mother, on account of his love for her, deem it necessary to do the rather singular, and unnecessary and improper thing, of reciting so large a pecuniary consideration, for an

act so purely voluntary? This recital is untrue, in point of fact, and the language employed, savors of deliberation and intention, rather than of inadvertence. Not two months before that, she had executed to him, a deed to the same property, for the same consideration—$5,000—which sum seems to correspond with the value of the property conveyed. These circumstances are very persuasive to show, that the recital of this consideration was intended to lead those who read the deed, if it should come to light, to believe it was made for a fair valuable consideration.

As Chief Justice Marshall said, in *Shiras v. Craig*, 7 Cranch 34, "It is not to be denied, that a deed which misrepresents the transaction it recites, and the consideration on which it was executed, is liable to suspicion. It must sustain a vigorous examination. It is certainly always advisable, fairly and plainly to state the truth."—*Lawson v. Ala. Warehouse Co.*, 80 Ala. 343.

III. The deed was executed on the 3rd of May, 1887, and yet, as the record shows, it was not filed for record, until June 15, 1889. When it was executed, as is admitted in the answer, Mrs. Daws returned the deed to Dickson, with instructions to record it, but he carried it to his store and deposited it, and kept it,—intending to have it recorded, as he states,—until the 2nd of August, 1888, at which time he delivered it to Mrs. Beatrix, his sister, by the direction of his mother, who desired it to go on record, and yet, it did not find its way to the record, as we have seen, before the 15th June, 1889, and not then, until some of the creditors of Daws & Bogue were threatening to sue out attachments. It is alleged, that this failure to record, was the result, merely, of inadvertence, and not from any intention to defraud any one. It is certain, however, that the natural consequence of a failure to record the deed, and its concealment, would be, to induce persons trading with or crediting him, to believe that he was still the owner of the property. (Authorities, *supra*.) "Whenever the effect of a particular transaction with a debtor, is to hinder, delay and defraud creditors, the law infers the intent, though there may be no evidence of a corrupt or dishonorable motive."—*Sims v. Gaines*, 64 Ala. 396.

IV. Prior to the date of the conveyance, as Dickson swears, he did not owe a dollar in the world. About the time of its execution, as the proof shows, he was contemplating the extension of his business and the establishment of a branch. He and his partner, as Dickson & Bogue, had conducted a safe and successful business, paying as

they went. When the business was enlarged, by the addition of a branch, conducted by the defendant, and he bought and sold on a larger scale, he fell behind in his payments ; the firm of Dickson & Bogue, as Bogue testifies, became strained, on account of the removal of goods from their store, to the branch business conducted by said Dickson, and at the dissolution of said firm, on the 21st January, 1889, the indebtedness of E. J. Daws, Agent, according to Bogue's account, was about $7,300.

V.   On the 2nd of August, 1888, as is shown, Croft & Co., creditors of Mrs. Daws, filed their bill against her, in the Chancery Court of Mobile county, alleging that prior to, and on the 21st March, 1887, she was indebted to them, and had, without any consideration, therefor, and for the purpose of hindering, delaying and defrauding the said Croft & Co., and other creditors, made the deed to E. J. Dickson, of that date, conveying to him the property therein described,—the same which was on the 3rd day of May, 1887, conveyed to Mrs. Daws by said Dickson,—and prayed to have said deed declared fraudulent, and the property condemned to pay Mrs. Daws' debts to them.

Answers were filed by both the defendants, which Dickson swears were not read over to him, but which the evidence of defendant's own witness Addie Beatrix, shows very clearly, is a mistake. In these answers, they both set out the facts to show, that said transaction was *bona fide*. In the answer of Mrs. Daws to that bill, she denied the allegations of fraud, stated particularly how she contracted the debt to Dickson, for which she executed the deed, states that she had promised him to repay him by conveying the property to him; that what she owed him, exceeded the consideration expressed in the deed ; that said Dickson had urged her to make the conveyance to pay him ; that there was no understanding or agreement of any kind, between her and said Dickson, further than that the conveyance was taken in full satisfaction of her debt to him ; that she remained on the property, afterwards, but it was by his consent and a pure matter of favor by him to her, and it was not the agreement, that she should occupy any part of the property or derive any benefits from it.   Dickson by his answer adopted Mrs. Daws' account of that transaction as true.   In the present case, said Dickson repudiates this account of that transaction, says it is not true, and gives an entirely different version of the matter.   The evidence also shows, that he was examined as a witness in that case, and swore substantially to the material statements of his mother's

answer, which he now denies. He and Mrs. Daws, each, carefully concealed, during the pendency of that suit,—which was compromised pending Dickson's examination, as a witness—in the answers filed by them, and in the evidence given in by Dickson, every thing about the existence of said deed to Mrs. Daws, which Dickson had voluntarily made to her, on the 3rd of May, 1887. His excuse as now made, in this suit is, that they were not asked by any body, about that deed. No one knew of its existence, except Mrs. Daws, Mrs. Beatrix, his sister, and himself. Croft & Co. were contending, that the property was Mrs. Daws' and ought to be condemned to pay her debts, and she and Dickson alleged, it belonged to Dickson. Complainants are now contending it belongs to Dickson, and he and her heirs, that it is Mrs. Daws'. Such an excuse and defense is not creditable to an ingenious, fair-minded debtor, and we can not accept it, to maintain a conveyance against which there are so many suspicious circumstances, and badges of fraud.

He gained an advantage of a favorable compromise, by setting up and maintaining the averments of his and his mother's answers in that suit, and he will not be allowed to repudiate what he there pleaded and deposed to, to give still another and farther advantage here.—*Lehman, Durr & Co. v. Clarke*, 85 Ala. 113; *Caldwell v. Smith*, 77 Ala. 165.

VI. The relation of attorney and client is shown to have existed between Mr. Smith and the defendants,—said Dickson and Mrs. Daws,—in the Croft & Co. suit against them. He advised with them, touching the defense to that suit, conferred with them fully about the facts of their case, and prepared and filed their answers for them. Unless the privilege is waived by defendants, he can not now, as a witness against them, disclose what then passed between them and him, about that case and its defense. Those facts are protected by the rule, as to confidential communications between attorney and client.—1 Gr. Ev. §§ 237, 238, 243. The answers, themselves, however, were introduced in evidence, without objection, and the fact of their being filed and their contents, and what Dickson testified in respect to them, is satisfactorily established by witnesses.

VII. There are no errors assigned on the action of the court in overruling the demurrers to the bill, as appellant's counsel seemed to think.

VIII. Several of the assignments of error proceed on the assumed predicate, that the bill is filed by complainants as executor and executrix of the will of James McDonnell, de-

[Rome & Decatur R. R. Co. v. W. J. Sibert et al.]

ceased, and the proof shows, that the cause of action occurred after the death of said McDonnell, and the record fails to show any order, or decree of any probate or other court, to sell said goods for the indebtedness for which the bill is filed. Complainants did not sue as executor and executrix. But, if this were so we have heretofore decided, that an administrator may sue individually on a contract made with him in his representative capacity, or where the claim grew out of the unauthorized disposition by him of the assets of the estate, by which he rendered himself liable, therefor, unless he has been discharged from such liability.—*Collins v. Greene*, 67 Ala. 215, and authorities there cited.

From what we have said, all the assignments of error disappear, and finding no error in the decree of the Chancery Court, it is affirmed.

Affirmed.