Horton v. Smith.

## HORTON v. SMITH.

1. The mere right to personal property in the possession of a third person, which possession originated, and is continued, in good faith, is not subject to seizure under an attachment or execution; and where there is no evidence tending to prove *mala fides*, a charge to the jury, laying down the law as above stated, is not erroneous, because it omits to refer to them the *bona fides* of the adverse possession.
2. The admissions or declarations of a vendor, or assignor, of personal property, made before the sale or assignment, are evidence against his vendee, or assignee, claiming under him, immediately or remotely, either by act or operation of law, or by the act of the parties. So they are in like manner evidence against any one, coming after such admissions, or declarations made, into his place, or representing him in respect to such rights and liabilities. But the exclusion of such evidence, where it could not have worked a prejudice, will not be available on error.

3. *Semble :* A derivative purchaser, without notice, cannot be affected by a notice to his immediate vendor; and if he purchases with notice, he may protect himself by the want of notice in such vendor.

Writ of Error to the Circuit Court of Lowndes.

THE plaintiff in error sued out an attachment on the 14th October, 1842, against the estate of Lewis B. Talliaferro, who it was alledged, resided without the limits of this State; which being levied by the sheriff of Lowndes, on certain slaves, the defendant in error interposed a claim, and gave bond with surety, for the trial of the right, as provided by statute. An issue was made up, and tried by a jury, who returned a verdict for the claimant, and a judgment was rendered accordingly. At the trial, a bill of exceptions was sealed, at the instance of the plaintiff, from which it appears that the slaves in question *descended* to the wife of the defendant in attachment as *heir at law* of the estate of Nicholas Johnson, deceased, (her father;) that the defendant took possession of the slaves, and held them as such heir, during the year 1832. In 1833, he put them in possession of C. E. Talliaferro, for his son N. J. and his daughter Harriett, who removed them from Lawrence to Marengo county, where they remained up to 1836; the defendant in the meantime residing in the county of Madison. The claimant deduced a title from N. J., the son of the defendant, and introduced evidence tending to show a parol gift of the latter, to his son, previous to his (claimant's) purchase, and before the debt due the plaintiff was contracted.

The plaintiff then offered a deed, executed by the defendant, which conveyed the slaves in question to C. E. Talliaferro, as trustee for the use of N. J. Talliaferro. This deed was duly acknowledged and certified, according to law, on the 23d September, 1840. It provides that the trustee shall hold the slaves embraced by it, in special trust and confidence, to the following uses and intents, viz: that he shall annually pay over to the *cestui que trust*, the hire and profits of the slaves, until he shall attain the age of twenty one years; or the trustee may, in his discretion, permit him to possess, employ, and work them, until he attains the age of twenty-one years. Whenever the *cestui que trust* shall attain to that age, it shall be the duty of the trustee, and he is directed, to convey and deliver the slaves to him in fee: to have

and to hold them, and the increase of the females, to the *cestui que trust*, and his heirs.

Proof was also adduced, tending to show, that there never had been a parol gift, from the defendant in attachment to his son, but there existed a mere intention to give, which was not consummated until the execution of the deed above recited. It was also shown, that N. J. Talliaferro had sold the slaves to the claimant, after that deed was made, before he was twenty-one years of age; and that he died previous to attaining his majority.

The plaintiff prayed the Court to charge the jury, that if they believed, from the testimony, that the deed constituted the only gift of the slaves, from the defendant in attachment, to the vendor of the claimant, and that the latter had derived title to them in no other way than under that deed; that he sold the slaves to claimant, and died before he was twenty-one years of age, then the slaves were the property of the defendant in attachment, subject to his debts, and they must so find by their verdict; which charge the Court refused to give.

The Court charged the jury, that if they found the facts as stated in the instruction above prayed, then the defendant in attachment would have a reversionary interest in the slaves, which his creditors could not reach in this proceeding, and which no one could recover, but by suit in the name of the defendant himself.

In the course of the trial, the plaintiff offered to prove that N. J. Talliaferro, while he had possession of the slaves, and before he had sold them to the claimant, but not in his presence, or to his knowledge, said that the slaves had been given to him by his father, after the plaintiff's and other debts then in execution, in the sheriff's hands, had been contracted, and subsequent to the date of the parol gift attempted to be established. But this testimony was rejected by the Court, &c.

T. J. Judge, for the plaintiff in error, insisted that the death of N. J. Talliaferro, before he became twenty-one years old, caused the slaves embraced by the deed, to revert to to the defendant in attachment; and having a legal interest which would support an action at law, it might be levied on at the suit of his creditor. True, the declarations of a vendor, are not admissible to defeat a title which he has conveyed; but what he has said about his title

while in possession of the property, is always received as evidence.

N. Cook, for the defendant in error, contended, that the absolute estate in the slaves vested in N. J. Talliaferro, without reference to his age, at the time of his death, and the distributees provided by the statute, in cases of intestacy, became entitled; and the father could not take, if there were children of the intestate, or brothers and sisters surviving. *Further*, if the father took a reversionary interest, or, as a distributee, he had no such right as could be sold under attachment or execution.

He insisted that the declarations of a vendor of real property were, under some circumstances, competent evidence, but the rule had not been extended so far as to admit such evidence, where personal property was the subject of the sale. He cited, 5 Jacob's Law Dic. 446-7, 526; Sugden on Powers, 81; 1 Mad. Chan. 252-3; 1 Ala. Rep. N. S. 582; 11 Pick. Rep. 50; 7 Cow. Rep. 752; 8 Wend. Rep. 490; 1 Mass. Rep. 165; 1 Esp. Rep. 357; 2 Ala. Rep. 526; 1 Starkie's Ev. 306-7, note, (1); 2 Ala. Rep. 648, 684.

COLLIER, C. J.—In Wier v. Davis and Humphries, 4 Ala. Rep, 442, it appears, that an administratrix sold, at private sale, a slave belonging to the estate of her intestate ; that afterwards, a creditor obtained a judgment against her, in her representative character, and caused an execution issued thereon, to be levied on the slave, in the possession of a person who had purchased from the vendee of the administratrix. It was held, that an administrator is not authorized to sell the personal estate of his intestate at private sale, and the purchaser, under such circumstances, does not acquire a valid title. But the Court said, although the title of the estate is not divested by the unauthorized sale, yet it does not follow that a creditor can subject the property to sale, under execution. "We have never understood, that an execution against the goods and chattels of any person, could be so used as to transfer a mere title, unaccompanied by the possession. It is obvious, that such a rule would be liable to abuse, from collusive arrangements, by which a person out of possession, and with a doubtful title, would substitute another in his place, clothed with the more imposing title of purchase under a sheriff's sale.

Added to this advantage, the possession itself would be changed by the seizure, and transferred to the purchaser." *Further*— "The relative condition of the parties would be entirely reversed, and the unquestioned possession which before was held under a defective title, would be turned into a mere right of action. We apprehend it is well settled that the mere right of action of a defendant in execution to personal property is not the subject of a levy. [Commonwealth v. Abel, 6 J. J. Marsh. 476; Thomas v. Thomas, 2 Marsh. Rep. 430, and cases there cited."]

In the case from which we have so largely quoted, the Court also cite Goodwin v. Lloyd, 8 Porter, 237 ; Brown v. Lipscomb, 9 id. 462; in which it was determined that a person who has a mere right of action to personal property cannot transfer it, so as to authorize a suit in the name of the purchaser ; and say that it is always a question for the jury, whether the adverse possession is *bona fide;* if this is wanting, the transfer, whether by sale or execution will be inoperative.

We have cited thus, at length the case reported in 4 Ala. Reports, because it seems to us to be conclusive of the present, both upon the charge given and refused. The facts show that the claimant holds the slaves in question, under a title adverse to the defendant in attachment; whether it be superior, or not, is immaterial in the present inquiry ; for the conflict of title depends, not upon the fact, that one is better than the other, but upon the opposite pretensions which the parties set up to the same object.

It is not necessary, in the posture in which this case comes before us, to consider whether the slaves conveyed by the deed, in trust for N. J. Talliaferro, reverted to the donor by the death of his son, during his minority. If this be so, the interest of the defendant in attachment, we have seen, is a mere right of property, not acquiesed in by the party in possession, and consequently not liable to seizure, by mesne or final process.

The charge given, it is true, does not refer the *bona fides* of the possession of the claimant to the jury, but assuming that it originated, and is continued in good faith, the Court say, that the reversionary interest of the defendant can't be reached, by an attachment sued out at the suit of his creditor. This charge, if there was evidence tending to prove *mala fides*, would be objectionable, but as there was no such proof, it was not necessary to embarrass the inquiries of the jury, by laying down the law upon a point which did not arise out of the evidence.

The admissions or declarations of the assignor, vendor, or holder of personal property, made before the sale, assignment, or other departure with his interest, are evidence against his vendee, assignee, or other person claiming under him, immediately or remotely, either by act and operation of law, or by the acts of the parties. And his declarations, with regard to his rights and liabilities, are in like manner evidence against any one coming after such declarations made, into his place, or representing him in respect to such rights and liabilities. In case of a sale, it is said, that such declarations of the vendor made previous thereto, as would be evidence against himself, are also admissible against his vendee. And this without regard to the question, whether the vendor be a competent witness, alive, capable of attending Court, and within reach of its process. The cases on this point, are collected by Cowen & Hill, in their notes to Phillips on Evidence, (2 vol. 596 to 603, and 656 to 669.) This statement of the rule will show, that the evidence of the declarations of the claimant's vendor were admissible upon principle; and the only remaining question is, was the plaintiff prejudiced by their exclusion.

In Fenno, et al. v. Sayre & Converse, 3 Ala. Rep. 458, we held, that a derivative purchaser, without notice, cannot be affected by a notice to his immediate vendor ; and if he purchases with notice, he may protect himself by the want of notice in such vendor. Sugden says, that although a deed be merely voluntary, or fraudulent in its creation, and avoidable by a purchaser, viz: would become void by a person purchasing the estate, yet it may become good by matter *ex post facto;* as, if a man make a feoffment by covin, or without any valuable consideration, and then the first feoffor enter and make a feoffment, for a valuable consideration; the feofee of the first feofee, shall hold the lands, not the feofee of the first feoffor ; for although the estate of the first feoffee was, in its creation covinous, or voluntary, and therefore voidable, yet when he enfeoffed a person for a valuable consideration, such person shall be preferred before the last." [Sugden on Vendors, 471 ; Bumpass v. Platner, 1 Johns. Ch. Rep. 212 ; Rochelle v. Harrison, 8 Porter's Rep. 351 ; Eddins v. Wilson, 1 Ala, Rep. N. S. 237.] Now if the claimant was a *bona fide* purchaser, without notice of a fraud, or of facts, which the law considers sufficient to establish it, or from which it is inferrable, then he could not be affected by a notice to his vendor. There is nothing

in the record, as we before remarked, on which the imputation of unfairness in the claimant's purchase can rest. This being assumed, the liability of the slaves to the attachment of the plaintiff, cannot be maintained; for then the claimant's possession would be *bona fide*, under a claim of right, honestly acquired, which, we have seen, cannot be divested, by the levy of an attachment, or execution. The rejection of the evidence then, did not injuriously affect the plaintiff. The judgment of the Circuit Court is consequently affirmed.