## CARLOS, USE, &c. v. ANSLEY.

1. The mere right of property in chattels, unaccompanied with the possession, cannot be levied on and sold under a *fieri facias*, where the possession is holden *bona fide*, adversely to the defendant in execution.

2. Where a surety against whom, with the principal, a judgment is rendered, points out the property of the latter to the constable, and upon its being levied on and offered for sale, produces a mortgage on the same property, executed by the principal for his indemnity, and forbids the constable to sell, in consequence of which he purchased the property at about one eighth of its value: Afterwards a *fieri facias* against the principal upon another judgment was levied on the same property, a claim interposed by the surety, and an issue made up to try the right: *Held*, that the *bona fides* of the claimant's purchase should have been referred to the jury, and if found against him, the property should be subjected to the plaintiff's execution.

3. At a sale under execution of the principal's property, it is competent for the surety to purchase, although the judgment and *fieri facias* may be against them jointly.

Writ of Error to the County Court of Macon.

A *fieri facias* was issued from the County Court of Macon, on the 10th of September, 1844, at the suit of the plaintiff in error, against the goods, and chattels, &c. of John Bedell and Thomas M. Robinson; which writ was levied upon a negro man named Harry, as the property of Robinson, on the 24th December, 1844, a claim was interposed by the defendant in error, and a bond executed, with surety, to try the right pursuant to the statute. An issue being made up as required in such cases, the cause was submitted to a jury, who returned a verdict for the claimant, and judgment was rendered accordingly.

On the trial, a bill of exceptions was sealed at the instance of the plaintiff; from which it appears, that before a lien attached in his favor, the slave in question was levied on by a constable, and regularly sold, according to law. At that sale, one Sampson Lanier became the purchaser, for the sum of fifty dollars, as the agent of the claimant, and with money furnished by him. The sale was made under a *fi. fa.* against the property of Robinson, and the

claimant, as his surety in several forthcoming bonds, amounting to the sum of one hundred and fifty dollars; all which were paid off by the claimant. There were many persons present when the slave was sold, and the sale in all respects regular, yet fifty dollars was the highest bid made for him. The claimant took possession of the slave in july, 1844, and retained him until the levy was made, in December of that year.

When the levy was made by the constable, the claimant pointed out to him the slave in question, as the property of Robinson; and when he was offered for sale, the claimant was present, forbid the sale, and exhibited a paper, which he said was a mortgage on the slave.

The proof tended to show, that these acts and declarations of the claimant, caused the slave to sell at so small a sum, and but for them, he would have sold for four hundred dollars, or thereabout. The mortgage was dated in January, 1844, and was pronounced void by the court; because it professed to be made for the sole purpose of securing the claimant against all liabilities he might incur by becoming the surety for Robinson; which he stipulated to become in all cases when desired by the latter.

It was shown that the claimant became the surety for Robinson for about three hundred and fifty dollars—part of which he had paid, and the balance would have to pay. Robinson, at the time the mortgage was executed, was indebted beyond his ability to pay.

The court charged the jury—1. That the mortgage was void. 2. That if the slave in question was in the adverse possession of the claimant, when the levy was made, then the levy was irregular, and they should find for the claimant.

Thereupon the plaintiff's counsel prayed the court to charge the jury—1. That if by means of the fraudulent mortgage, the claimant became the purchaser of the slave for less than he otherwise would have sold for, then he acquired no title by his purchase, and they should find the property subject to the execucution; which charge the court refused. 2. That if the claimant bought the slave at a sale under execution, to which he was a party defendant, then his purchase created no change of title; which charge was also refused.

3. The court then charged the jury, that if the claimant purchased the slave in question, at a sale by a constable, made in

conformity to the directions of the law, and took and retained possession under such purchase, then he held adversely to the defendant in execution.

To the charges given, with the exception of the first, and to those refused, the plaintiff excepted.

COCKE, and S. WILLIAMS, for the plaintiff in error.

S. F. RICE, for the defendant in error, cited 4 Ala. Rep. 321, 402, 442; 6 Ala. Rep. 690, 894; Horton v. Smith, 8 Ala. Rep. 73; 4 Litt. Rep. 273.

COLLIER, C. J.—It may well be questioned, whether a mortgage made avowedly for the purpose of securing the mortgagee against advances made *in futuro*, may not be supported, if it was executed in good faith. [Stover v. Herrington et al. 7 Ala. Rep. 142.] But as this question, though made upon the record, is not presented for revision, we decline considering it.

In Wier v. Davis and Humphries, 4 Ala. Rep. 442, it was held, that an execution against the goods and chattels of a party, could not be so used as to transfer a mere title unaccompanied by the possession; that such a power would be liable to abuse from collusive arrangements, by which a person out of possession, and with a doubtful title, would substitute another in his place, clothed with the more imposing title of purchaser, under a sheriff's sale. Added to this advantage, the possession itself would be changed by the seizure, and transferred to the purchaser. "We apprehend," say the court, that "it is well settled, that the mere right of action of a defendant in execution to personal property, is *not* the subject of a levy." This case is cited with approbation in Horton v. Smith, 8 Ala. Rep. 73, where it is also added, that the *bona fides* of the adverse possession is always a question for the jury; "if this is wanting, the transfer, whether by sale or execution, will be inoperative."

We will not undertake to pass judgment upon the acts and declarations of the claimant, in directing the slave to be levied on, then appearing on the day of sale, exhibiting his mortgage, and forbidding the constable to proceed, in consequence of which the slave sold for about one eighth of the sum he would otherwise have commanded. But the existence of these facts are of such a

character, that it should have been referred to the jury, to inquire whether the claimant was influenced by integrity of purpose ; or whether his intention was not to defraud the creditors of Robinson, by purchasing the slave at a depreciation. If the claimant used his mortgage with the intention to produce either of these results, then he cannot be allowed to derive any advantage from his purchase. One or more of the charges withdrew the question of fraud from the jury, and supposed that the mere fact of an adverse possession by the claimant, whether acquired *in good faith or not,* made the subsequent levy irregular and unauthorized. In this we have seen that the Circuit Judge misapprehended the law. See Horton v. Smith, *supra.*

The fact that the claimant was, as the surety of Robinson, a joint defendant in the *fi. fa.* did not take from him the right to purchase the property of his principal, when sold to satisfy it. We can conceive of no reason why his rights in this respect should be restricted ; especially when by allowing a joint defendant to become a competitor, at a sale under execution of his co-defendant's property, he may the better protect his own interests, without injuriously affecting the plaintiff in execution, or others.

Without adding any thing more, we have but to declare, that the judgment is reversed, and the cause remanded.