## GOODGAME v. COLE & CO.

1. When the question involved is fraud, the vendee may show that he was advised by a third person to come to this State for the purpose of securing a debt from the vendor, and that he came for that purpose.  His purpose in coming is a part of the *res gestae.*

2. Admissions by the vendor that he was indebted to the vendee, if made at a time previous to contracting the debt with the attaching creditor, are admissible, it being shown the consideration of the sale was notes due from the vendor to the vendee.

3. Admissions made by the vendor at the time of the sale, that he was indebted to the vendee, are admissible as part of the transaction; but as proof of consideration, such admissions are entitled to no weight, if the creditor's debt was existing at the time of the sale.   If the evidence creates a suspicion of the fairness of the transaction, it is incumbent on the vendee to prove the payment of an adequate consideration.

4. Declarations made by a vendor remaining in possession of slaves, after the period when, by the ordinary course of trade, they should have passed to the possession of the vendee, are admissible as evidence on the ground that, from this circumstance, a fraudulent combination between them might be inferred.

Writ of Error to the Circuit Court of Dallas.

CLAIM to certain horses, slaves and cotton levied on by *fi. fa.* at the suit of Cole & Co. against Wm. B. Goodgame.

1. At the trial, it was in evidence that Wm. B. Goodgame, the defendant in execution, in the year 1835, was appointed guardian for George H. Goodgame, the claimant, he being then a minor. In April, 1844, some two or three years after George H. had attained his majority, there was a sale of the slaves, levied on by this execution to the claimant—the consideration expressed in the bill of sale was $1200, and the subscribing witness stated that notes for that sum, bearing date 27th March, 1842, 1st May, 1842, and 1st March, 1843, were given up by George H. to W. B. Goodgame. There was also evidence tending to show, that at the death of the father of George H., some property was left, to which his son was entitled to a distributive share, but it was not made to appear whether it came to the possession of his said guardian, or whether there was any indebtedness from the said guardian to his ward at the time of the sale. There was also evidence from the plaintiff, tending to show that this sale was fraudulent. The subscribing witness to the bill of sale having proved its execution, and identified the notes given by the claimant for the price, the claimant then proved by this witness, that early in 1844, he went to the State of Georgia, where he saw Goodgame, the claimant, and in consequence of what the witness had heard in Alabama, advised him to return with the witness, and endeavor to secure his indebtedness against the defendant in execution. That George H. did return with the witness for that purpose, and in a few days after reaching here, the purchase was made as before stated. The plaintiff objected to this evidence, and the court excluded it, except that the claimant did come from Georgia about that time, and that he did make the purchase, as stated.

2. The claimant also offered to show by the same witness, that two years previous to the sale, Wm. B. Goodgame admitted to him he was indebted to the claimant. This was also excluded.

3. The claimant also offered to prove by this witness, the declarations of the defendant prior to the sale, and whilst he

was in possession of the property, in regard to his indebtedness to claimant. This was also excluded.

4. The claimant also offered to prove by this witness, that at the time of making the sale, the defendant in execution stated the notes had been given on account of his indebtedness to the claimant as his guardian. This was also excluded.

5. It also appeared in evidence, that at the time of the sale, Wm. B. Goodgame was a tavern keeper in Cahawba, and that George H. boarded with him, and continued to board there to the end of the year 1844. That early in 1845, both the Goodgames went together to a farm in the country, and both worked and carried on said farm. That the slaves in controversy also worked there. During 1844, said slaves were kept as servants about the tavern, and Wm. B. Goodgame appeared to control them. The plaintiff in execution produced a witness, who testified that in 1844, after the said sale, and while the slaves were employed in the tavern, said Wm. B. claimed and spoke of the slaves as his own property, and said as to one of them, if he were to sell him he should ask a very high price. It did not appear the claimant was then present, or knew of this claim by Wm. B. This was admitted against the objection of the claimant.

The claimant excepted to these several rulings of the court, and they are now assigned as error.

Evans, for the plaintiff in error, insisted—

1. That all the evidence offered by the claimant was admissible as part of the transaction of sale, and as tending to explain its circumstances. [Greenl. Ev. § 108, 109; Powell v. Olds, 7 Ala. Rep. 652; 9 Ib. 861; McBride v. Thompson, 8 Ib. 650; Yarborough v. Moss, 9 Ib. 382; Downman v. Frow, 6 Ib. 879.]

2. Declarations of a party, *ante lite motem*, and against his interest at the time, are admissible. [Greenl. Ev. § 147, 148, 149, 181, 153.]

3. The general rule is, that declarations of the vendor are not admissible against his vendee, and there seems nothing in the circumstances of the case to withdraw it from the rule. [Hard v. West, 7 Cowen, 752; Whitaker v. Brown, 8 Wend.

490; Talcot v. Wilcox, 9 Conn. 134; Cowan & Hill's Notes, 602.]

PECK, contra, cited McBride v. Thompson, 8 Ala. R. 653; Gary v. Terrell, 9 Ib. 206.

GOLDTHWAITE, J.—1. It is possible most of the questions presented on this record might have been otherwise ruled, without affecting the result; but this is no reason against their revision here, as it is impossible to say what influence the rejected testimony might have had with the jury. It has been well said, the affairs of men consist of a complication of circumstances so intimately interwoven, as to be hardly separable from each other. Each owes its birth to some preceding circumstances, and in its turn becomes the prolific parent of others; and each, during its existence, has its inseparable attributes and its kindred facts materially affecting its character, and essential to be known in order to a right understanding of its nature. These surrounding circumstances may always be shown to the jury along with the principal fact. [Greenl. Ev. § 108.] In every transaction where fraud is imputed, it must be conceded to be of essential importance the jury should be put in possession of every fact and circumstance tending to elucidate the question. It is impossible to say the same conclusion would arise in the mind of any one, of the validity of a transaction carried on by parties secretly and without any known motive, and one which was transacted at the instance, or on the advice of another. In this view, the fact that the claimant was advised by the witness to come to this State for the purpose of securing a debt, is a circumstance bearing upon a sale recently made, in connexion with that avowed object. It is entirely distinct from proof that the one party was indebted to the other, and did not tend to establish that fact: but when a consideration was otherwise made to appear, would certainly be admissible to show, in some degree at least, that the object of the journey to this State was not to take a pretended conveyance.

2. The question next in order, has become one of considerable importance, as affecting the general practice, since the

enactment of the statute by which defendants in execution are excluded as witnesses in claim suits. As this source of evidence is cut off, it is evident that cases may arise in which there may be great difficulty in showing the consideration for sales of property made by a debtor to a stranger, yet this difficulty cannot effect a change of established rules. It has several times been held in this court, that the recitals in the deed made by the debtor, or admissions by him at the time of its execution, were not evidence. [McCain v. Wood, 4 Ala. Rep. 258; Branch Bank v. Kinney, 5 Ib. 9.] In the first of these cases, the rule is stated with reference to a deed, and admissions *made after* the accruing of the debt to the creditor contesting the deed, and in the last we presume the same condition of facts existed, although not stated in the report of the case. The objection to such evidence is said to be, that it can at any time be manufactured by one indebted, and by means of it a creditor might be defeated, as it would in most cases be impracticable to prove a negative, or disprove what the debtor asserted as the consideration. It is very possible the rule is confined to declarations and admissions *made after the creation* of the contesting creditor's debt, as until then, there is no reason why even a voluntary conveyance may not be good. Indeed, such seems to be the settled practice of the English courts, when it becomes necessary to prove the debt due to the petitioning creditor, in a suit by the assignees of a bankrupt. In such a suit, the bankrupt is not a competent witness, (Chapman v. Gardner, 2 H. B. 279); yet his admissions of indebtedness, *made before* the act of bankruptcy, may be given in evidence, though they cannot be if *made after* the act. [Smallcombe v. Watts, 13 Price, 131; see also Greenl. Ev. § 181.] This seems to be the precise principle which is adverted to in McCain v. Wood, *before cited*, and will let in as evidence admissions made by the debtor prior to the creation of the debt, which the attaching creditor is seeking to enforce against his assignee or grantee. What weight such admissions would be entitled to in the minds of the jury, it is evident would depend on the circumstances of the case, but in principle they seem to be admissible, if made by the debtor at a period of

11

time when it is not his interest to make them, and when they cannot affect the creditor, against whom they are afterwards used. It will thus be seen, the test of the admissibility of such admissions, is not the length of time previous to the trial, but that it is the fact whether at the time the debtor had an interest in creating a title in another to defeat the particular creditor. Whether the fact of a similar interest to defeat some other creditor would not produce the same effect, is a matter we need not consider at this time. The same remarks apply to the other admissions offered in evidence, as having been made anterior to the supposed sale of the slaves.

3. What transpired at the sale was proper evidence on the principle first stated. It was a part of the transaction of sale, and independent of the effect it would have as proof of the consideration passing, the admission should have gone to the jury. As proving consideration, it was entitled to no weight, if the creditor's debt was existing at that time, (McCain v. Wood, 4 Ala. Rep. 258); and if the evidence on the part of the creditor induced a suspicion of the fairness of the transaction, it was incumbent on the claimant to prove the payment of an adequate consideration. [Seamans v. White, 8 Ala. Rep. 656.]

4. With reference to the proof of declarations by the vendor, when remaining in possession of the slaves after the period when, by the ordinary course of trade, they should have passed to the possession of the vendee, we think it well established they were admissible, on the ground that there was evidence from which a fraudulent transaction between the vendor and vendee might be inferred from there being no change in the possession. [Borland v. Mayo, 8 Ala. Rep. 105; Cowen & Hill's Notes, 177, and cases there cited.]

The court having erred, however, in the other particulars, the judgment is reversed, and the cause remanded.