# Moses, Blum & Weil *v.* Dunham, Buckley & Co.

*Contest between Attaching and Judgment Creditors over Fund in the hands of the Sheriff, realized from sale of Debtor's Property.*

1. *Declarations of debtor in contest between creditor and purchaser; when inadmissible.*—It is a well settled principle of evidence, that, in a contest between an attaching or execution creditor and a purchaser from the debtor, who has paid value, without notice, actual or constructive, of a fraudulent intent on the part of the seller, the admissions and declarations of the debtor, made anterior to the sale under which title is asserted, are not admissible in evidence against the purchaser to show a fraudulent intent on the part of the debtor in making the sale.

2. *Declarations by debtor in contest between attaching and execution creditors; when admissible.*—But in a contest between an attaching creditor and a creditor who has obtained a judgment by confession, over a fund realized from a sale of merchandise, on which the attachment and an execution issued on the confessed judgment had been levied, acts and declarations of the debtor in relation to his property, the debt due the attaching creditor, and his plans and purposes in reference to its payment, done and made before the judgment was confessed, are admissible in evidence for the attaching creditor on an issue of fraud *vel non*, made up between the contesing parties, in the absence of all evidence tending to show when the claim of the judgment creditor accrued.

3. *Presumption on appeal in favor of ruling of lower court.*—On appeal this court will presume every thing in favor of the correct ruling of the primary court, which the record does not affirmatively show to be otherwise.


APPEAL from the City Court of Montgomery.

Tried before Hon. THOMAS M. ARRINGTON.

[Moses, Blum & Weil v. Dunham, Buckley & Co.]

This was a contest between Dunham, Buckley & Co. and the Phœnix Manufacturing Company, a corporation, attaching creditors of Baum & Kullman, the appellees, and Moses, Blum & Weil, and others, judgment creditors of Baum & Kullman, the appellants, over a fund in the hands of the sheriff of Montgomery county, which was realized from a sale of a stock of goods, wares and merchandise, on which he had levied the two attachments in favor of the appellees, and also executions issued on the several judgments in favor of the appellants. The statement of the case made by the record in the opinion only renders it necessary to set out the testimomy introduced on the trial by the appellees.

The deposition of Charles E. Beach, a witness examined on behalf of the appellees, was read in evidence by them, the substance of which was as follows: On 29th October, 1880, the witness, who was the agent of the Eagle & Phœnix Manufacturing Company, met Mr. Baum at the store of Baum & Kullman, in the city of Montgomery, and told him he had heard that his firm were having some trouble financially, and asked him whether it was true, requesting at the same time a statement of their business. Baum's reply was, that they were having no trouble, were perfectly solvent, had paid all accounts and other claims that had fallen due up to that date, and expected in future to pay all claims as they became due; that although the account due the Eagle & Phœnix Company did not fall due until the following week, they would try to make a payment thereon during the day, if witness would call again. He further stated that at that time his firm had on hand a stock of goods worth about $20,000; that they had about $12,000 in notes and accounts on their books, and that about $18,000 would cover their indebtedness, all of which they expected to meet as it became due. He expressed full confidence in the ability of his firm to carry on their business, and no reference whatever was made by him to an assignment; and he stated that he saw no reason for the report that that they were in trouble. On the same day the witness had a second conversation with Baum at the firm's store, in which he stated that it would be impossible for him to pay witnesss any money on that day, as he had expected to do, because he had $4,000 due in New York during the early part of the following week, which he had to meet. He, however, assured witness that he would meet every bill when due, and that he need not have any uneasiness about the account, for they would pay it either before or at maturity. On 16th November, 1880, Baum & Kullman paid witness' company one account which it held against them, and on 19th November, 1880, the company's treasurer drew a draft on them for the amount of another account, which became due on 20th

November, 1880, through a bank at Montgomery. On the last named date witness went to Montgomery to look after this draft. It was presented twice by the bank having it for collection on Monday, November 22d, 1880, within banking hours, but was not paid, On the evening of that day witness heard that Baum & Kullman had confessed judgments in favor of the appellants. The evidence of this witness further tended to show that Baum & Kullman were then insolvent. Objections were duly made by appellants to so much of this deposition as related to conversations had by the witness with Baum & Kullman; but their objections were overruled, and they excepted.

The appellees also examined as witnesses the cashier, collector and book-keeper of the bank having the draft for collection, by whom its presentation and non-payment were shown. The collector, who presented the draft a little after nine o'clock on the morning of 22d November, 1880, testified that when he did so, Baum & Kullman told him that "they would come up during the day and arrange the matter." The book-keeper testified "that on 22d November, 1880, he met Mr. Baum on the street about ten o'clock a. m., who volunteered and told him that he would be up at the bank and arrange the Eagle & Phœnix matter." To the testimony of each of these witnesses the appellants separately objected, but their objections were overruled, and they excepted.

The appellants asked the court in writing to charge the jury, that "when interrogatories are propounded to a witness, he has no right to answer any more than is called for in said interrogatories." This charge the court refused to give, and the appellants excepted.

The rulings above noted are here assigned as error.

SAYRE & GRAVES and E. A. GRAHAM, for appellants. (1) The declarations made by Baum were not competent. There was no proof of any design on the part of appellants to commit a fraud, or that they knew that there there was any intention on the part of Baum & Kullman to commit a fraud. No predicate was proved, which could, under any circumstances, render such declarations competent.—*Abney v. Kingsland*, 10 Ala. 355; *Oden v. Rippetoe*, 4 Ala. 68; *Pipkin v. Pickett*, 64 Ala. 524; *Bradley v. Ragsdale*, 64 Ala. 558; *Mahone v. Williams*, 39 Ala. 214; *Chapin v. Pease*, 10 Conn. 69. (2) Baum was a competent witness, and for this reason his declarations were not competent.—*Bank v. McDade*, 4 Port. 270. (3) The declarations were not admissible without establishing facts, from which an inference may fairly be deduced, that there was a combination between the appellants and Baum & Kullman to defraud the creditors of the latter.— *Weaver v. Yeatmans*, 15 Ala. 539.

[Moses, Blum & Weil v. Dunham, Buckley & Co.]

CLOPTON,. HERRERT & CHAMBERS, *contra.*—(1) It was not only competent, but important and material to prove the existence of the debts of Baum & Kullman to the appellees prior to the confessions of the judgments in favor of appellants. It was also competent to prove the existence of the debts by the admissions of Baum & Kullman, made before the judgments were confessed. If the debts were evidenced by notes, which are, in this respect, but written admissions of the debtor, the notes would be admissible in evidence.—*Mayer v. Clark*, 40 Ala. 259; *Pugh v. McRae*, 2 Ala. 393. (2) The general pecuniary condition of Baum & Kullman was a fact of importance, which the appellees are permitted to prove.—*Harrell v. Mitchell*, 61 Ala. 270. For this purpose the declarations of Baum & Kullman, made before the confessions of the judgments, are admissible.—*Goodgame v. Cole & Co.*, 12 Ala. 77; *Simerson v. Branch Bank*, 12 Ala. 205; *Dubose v. Young*, 14 Ala. 139. (3) On the admissibility of the declarations of Baum & Kullman the following authorities were also cited and discussed: *Sally v. Gooden*, 5 Ala. 78; *Remy v. Duffee*, 4 Ala. 365; *Horton v. Smith*, 8 Ala. 73; *Reed v. Smith*, 14 Ala. 380; *Pearce v. Nix*, 34 Ala. 183; *Alexander v. Caldwell*, 55 Ala. 517; *Jones v. Norris*, 2 Ala. 526; *Hodge v. Thompson*, 9 Ala. 131; *Garner v. Bridges*, 38 Ala. 276; *Borland v. Mayo*, 8 Ala. 104.

STONE, J.—On the trial in the court below a charge was asked by appellants, the charge refused, and an exception reserved. No mention is made of that exception in the arguments of counsel, and we suppose it is not insisted on. The vice of the charge is, that it sought to have the jury perform a service which the court alone was competent to perform. The only questions for our consideration arise on the admission of testimony offered by plaintiffs below, and objected to by defendants—appellants in this court. The record does not purport to set out all the evidence, but only enough to raise the questions.

The plaintiffs below were attaching creditors of Baum & Kullman. These attachment suits were reduced to judgment before the trial was had. The Eagle & Phœnix Company, one of the attaching creditors, offered proof tending to show its claim was contracted in September, 1880, and was evidenced by an acceptance payable at the First National Bank in Montgomery, November 20–22, 1880. The acceptance being dishonored, the attachment was sued out in the evening of the last day of grace. We are not informed when the claim of Dunham, Buckley & Co., the other attaching creditors, was contracted.

On the 22d day of November, 1880—hour of the day not

[Moses, Blum & Weil v. Dunham, Buckley & Co.]

shown—Baum & Kullman, merchants, confessed six several judgments in favor of the defendants in the court below—appellants here—for various sums, aggregating about $8,150, besides costs. Executions on these confessed judgments were issued on the same day, and placed in the hands of the sheriff, who proceeded to levy them on the stock of merchandise in the store-house of Baum & Kullman. The sheriff sold these goods in January,1881, and realized for them something over $9,000. The attachments of the Eagle & Phœnix Manufacturing Company and Dunham, Buckley & Co., the appellees, were issued on the same day, November 22d, 1880, and were received by the sheriff and levied on the merchandise the same day, but after the levy of the executions issued on the confessed judgments. The attaching creditors notified the sheriff not to pay over the money realized from the sale of the merchandise, to the execution creditors; that they, the attaching creditors, claimed priority of payment, and that they attacked the confessed judgments as fraudulent. The sheriff thereupon reported the facts to the court, and asked for instructions as to the disbursement of the money. An issue was then formed, and tried before a jury; the attaching creditors being actors or plaintiffs, and the execution creditors being defendants; all the cases being tried together. The real issue tried was *fraud vel non* in the confession of the judgments, and the exceptions relate to conduct of, and conversations with Baum & Kullman, the common debtors of all the contestants, extending over a period of about one month anterior to November 22d, 1880.

Many cases have arisen, and been decided in this court, presenting a contest between an attaching or execution creditor on one side, and a purchaser on the other. The rule in such cases is, that a purchaser who has paid value, without notice, actual or constructive, of a fraudulent intent on the part of the seller, stands unaffected by the intention of the seller in making the sale, no matter how fraudulent that intention may have been. The reason is, that the purchaser, in fair trade, innocently parts with his property or money, and it is neither the mandate of the law, nor the requirement of morals, that he should suffer for the evil design of another. It rests on the fact that something valuable has been parted with, or some fixed liability incurred, as the consideration of the conveyance or transfer. If the conveyance be gratuitous, or, if the purchaser have notice, actual or constructive, of the seller's purpose to defraud his creditors, then the evil design of the seller taints the title of the purchaser.— *Wells v. Morrow.* 38 Ala. 125; *Crawford v. Kirksey*, 55 Ala. 282; *Lehman, Durr & Co. v. Bryan*, 67 Ala. 558. Out of this has grown a well considered and well settled principle of evidence, namely: That in such contests, which most usually

12

arise in " trials of the right of property "—a proceeding under our statutes—the admissions and declarations of the debtor, made anterior to the sale, under which the claimant asserts title, are not admissible evidence against him to show a fraudulent intent on the part of such debtor in making the sale, provided the sale was on valuable consideration, and the purchaser is not chargeable with knowledge of the fraudulent intent.—*Smith v. Rogers*, 1 Stew. & Por. 317; *Jones v. Norris*, 2 Ala. 526; *Oden v. Rippetoe*, 4 Ala. 68; *Abney v. Kingsland*, 10 Ala. 355; *Newcombe v. Leavitt*, 22 Ala. 631; *Mahone v. Williams*, 39 Ala. 202; 2 Brick. Dig. 18, § 71; *Pickett v. Pipkin*, 64 Ala. 520; *Bradley v. Ragsdale, Ib.* 558. It is contended for appellants that the questions raised by this record fall within the principle stated above.

But, it must be borne in mind that the appellants in this case are not purchasers of the merchandise, and are not shown to have surrendered or parted with anything valuable. They are simply creditors, asserting a lien—a first lien—in virtue of their excutions, first received by the sheriff, and first levied. This record contains no evidence of the time when their several claims accrued, other than the judgments confessed, if those judgments were evidence for or against strangers, of the existence of the liabilities therein acknowledged.—1 Brick. Dig. 823, § 273. Taking, then, the time when the judgments were confessed—November 22d, 1880—as the first and only evidence of the debts, there is nothing in this record to show that any act done by, or conversation had with Baum & Kullman, offered in evidence, took place after the judgments were confessed. It is our duty to presume every thing in favor of the correct ruling of the City Court, which the record does not affirmatively show to be otherwise. 1 Brick. Dig. 781, §§ 118, 120. In *Horton v. Smith*, 8 Ala. 73, it was decided that the declarations of a holder of personal property, with regard to his rights and liabilities, are evidence against any one coming after such declarations into his place, or representing him in respect to such rights and liabilities. See, also, *Goodgame v. Cole*, 12 Ala. 77. The general rule that recitals in a deed, made by a debtor, or admissions by him at the time of its execution, are not evidence to prove the debt in a contest with others, must be confined to declarations and admissions made *after* the creation of the contesting creditor's debt.—*Goodgame v. Cole, supra; Dubose v. Young*, 14 Ala. 139; *Gillespie v. Burleson*, 28 Ala. 551; *Pearce v. Nix*, 34 Ala. 183; *Alexander v. Caldwell*, 55 Ala. 517.

Applying this principle to this case, it justified the admission in evidence of acts, declarations and conversations of Baum & Kullman in relation to their property, the debts due to the at-

[Tankersly, Adm'r, v. Pettis.]

taching creditors, and their plans and purposes in regard to. their payment, at least until the contestants showed themselves to be creditors. None of the testimony given by plaintiffs' witnesses against the objection of defendants, is shown to have been illegal.

Affirmed.