# Shealy & Finn *v.* Edwards.

### *Trespass de Bonis Asportatis.*

1. *Trespass against sheriff for levying attachment; admissibility of evidence.*—On the issue of fraud *vel non* in the sale of a stock of goods, in an action of trespass *de bonis asportatis* brought by the purchaser against a sheriff who had levied an attachment on the goods as the property of the vendor, the fact that possession of the goods had been delivered to the plaintiff, and that sales from the stock had been made by his clerk in due course of trade, prior to the levy of the attachment, is relevant evidence for the plaintiff, as tending to show a *bona fide* ownership of the goods; but an itemized list of the goods sold by the clerk is immaterial, and is properly excluded from the jury.

2. *Same; when attachment proceedings competent for sheriff.*—In such case, the papers and record in the attachment suit, including an order for the sale of the attached goods, and a judgment in favor of the attaching creditor, are competent evidence for the sheriff. While the judgment may not be competent to prove the existence of the debt on which it is based, it is admissible for the purpose of showing that the lien create by the levy of the attachment had been perfected in the manner prescribed by law; and if the plaintiff desires to limit its effect, he should request an appropriate charge.

3. *Sale of property by debtor; what necessary to render fraudulent.* To render a sale of property by a debtor fraudulent as against creditors, it must be shown that the transaction was infected with a fraudulent

[Shealy & Finn v. Edwards.]

intent on the part of the debtor, and that in such intent the purchaser participated.

4. *Same ; evidence of fraudulent intent.*—The fraudulent intent of the debtor may be shown by his conduct and declarations, so immediately connected with the transaction as to throw light upon, or illustrate its nature; but such conduct and declarations are inadmissible against a purchaser for value, unless they are so intimately related to the principal fact, which is assailed as fraudulent, as to constitute a part of the *res gestæ*, or were brought to his knowledge prior to the purchase.

5. *Same ; proof of purchaser's participation in fraudulent intent.*—The participation of the purchaser in the fraud may be shown by proof of such fact or facts as are sufficient to charge him with notice of the debtor's fraudulent intent; and for this purpose, knowledge on his part of facts which, however general in their nature, are sufficient to put him on inquiry, by reasonably exciting in his mind a just suspicion as to the honesty or *bona fides* of the transaction, is sufficient.

6. *Same.*—Transfers by the debtor to his father and sister of promissory notes given by the purchaser for a stock of goods sold on a credit, made several days after the sale, without the purchaser's knowledge, are not admissible as evidence against him on the issue of fraud *vel non* in the sale of the goods.

7. *Badge of fraud ; burden of proof, when not shifted.*—It can not be asserted, as a general rule, that every badge of fraud, casting suspicion on the good faith of a transaction, shifts the burden of proof upon the party claiming under it, so as to require him to explain it; and that, in the absence of explanation, such transaction is to be necessarily pronounced fraudulent.

8. *Right of debtor to prefer creditors.*—A debtor is not forbidden by law to make an honest preference of creditors in the payment of his debts, provided he does so without any intent to hinder or delay his other creditors.

9. *Sale ; when not vitiated for fraud.*—Where a sale by a debtor is entirely free from all imputation of fraudulent intent, it is not sufficient to vitiate it, that its natural result was to hinder, delay or defraud his creditors.

10. *Sale fraudulent as to creditors, valid inter partes.*—A sale of property by a failing or insolvent debtor, though consummated with a fraudulent intent, is valid as between the parties ; and is invalid only as to complaining creditors whose legal rights have been thereby prejudiced.

11. *Badges of fraud ; when charge in reference to, invades province of the jury.*—A charge asserting that designated badges of fraud, when taken together, raise a " violent presumption " of a secret trust in favor of a debtor who has made a conveyance of his property, invades the province of the jury, and is, for that reason, erroneous.

APPEAL from Talladega Circuit Court.

Tried before Hon. LeRoy F. Box.

This cause was before this court at a former term, and is reported. See 73 Ala. 175. It was an action of trespass, brought by Shealy & Finn against Joseph A. Edwards, Joseph Hardie and others, to recover damages for the seizure and asportation of certain goods, wares and merchandise, and was commenced on 19th January, 1882. The defendants filed a joint plea of not guilty, and the defendant Edwards also filed a special plea, alleging, in substance, that the goods, wares and merchandise described in the complaint were levied on by him as sheriff of

[Shealy & Finn v. Edwards.]

Talladega county, under an attachment issued out of the circuit court of that county, at the suit of Joseph Hardie against Terrell & Vincent ; and that at the time of said levy, said chattels were the property of the defendants in attachment. The cause was tried on issues joined on these pleas, the trial resulting in a verdict and judgment for the defendants.

As the plaintiffs' evidence, introduced on the second trial, "tended to prove," on 9th December, 1881, they purchased from Terrell & Vincent, merchants, in the town of Talladega, the stock of goods in controversy, being the latter's entire stock, consisting principally of new goods, for $2750, for which they executed three promissory notes, two for $1000 each, and the other for $750, payable to Terrell & Vincent or bearer twelve months after date ; and about eight o'clock p. m. of that day the goods, with the storehouse, were delivered to the plaintiffs. It was, however, " understood and agreed between the parties, that the new goods should be taken at the invoice prices, and the old goods should be valued and taken at what they were fairly worth, and they were to commence the invoice the following Monday ; and if they amounted to less than $2750, the notes were to be credited with the difference ; if to more, the excess was to be paid by the note of Shealy & Finn to Terrell & Vincent, at twelve months." Shealy was in Talladega on Monday to take the invoice, but found the defendant Edwards in possession. On the day following the sale, a clerk of the plaintiffs, who was in charge of the store and goods, opened the store, and sold goods for the plaintiffs all that day, and kept an itemized list of the articles sold by him. The plaintiffs offered this list in evidence, but, on defendants' objection, it was excluded, and they excepted. The plaintiffs' evidence further tended to show their ability to pay for the goods ; that the purchase was made in good faith, for the purpose of selling again at retail, and without any knowledge, on their part, of the pecuniary condition of Terrell & Vincent, or of their indebtedness, or that they were in failing circumstances ; that the goods were levied on by the defendant Edwards, as sheriff of Talladega county, early Monday morning following the purchase, under the attachment mentioned in said defendant's special plea, and were by him afterwards sold. The value of the goods was also shown.

The evidence introduced on behalf of the defendants tended to show that, at the time said purchase was made, Terrell & Vincent were largely indebted, were in failing circumstances, and the plaintiffs then knew their pecuniary condition ; that the cash value of said stock of goods was $3500 ; and that " in making said sale of the goods in question, Terrell & Vincent intended to hinder, delay and defraud their creditors, and the

plaintiffs knew of that intention, and that they intended to aid them in their intention, by making said purchase; but as to the intention to defraud, and plaintiffs' knowledge thereof, and participation therein, "the evidence offered by plaintiffs and defendants was conflicting." The papers relating to the attachment sued out by Hardie against Terrell & Vincent were read in evidence, and the issue and levy of the attachment, and the existence of the debt on which it was founded, were shown. The defendants were allowed, against the plaintiffs' objection, to read (1) an order made in the attachment suit for a sale of the goods, and (2) a judgment rendered in said suit in favor of Hardie against Terrell & Vincent; and to these rulings the plaintiffs duly excepted. The defendants were also allowed to prove, against the plaintiffs' objection, that "in a few days after the sale and delivery of the goods to Shealy & Finn, Vincent [of the firm of Terrell & Vincent] delivered the note for $750, and one of the notes for $1000, which Shealy & Finn had given Terrell & Vincent in the purchase of the goods in question, to his father, John Vincent, and the other note for $1000 to his sister, Miss Malinda Vincent." To this ruling the plaintiffs excepted. In rebuttal the plaintiffs introduced evidence tending to show that on 9th December, 1881, Terrell & Vincent were indebted to the said John Vincent in the sum of about $2000, and to the said Malinda Vincent in the sum of $1000. The bill of exceptions purports to set out all the evidence, the substance of which is stated above.

The court charged the jury, *ex mero motu*, among other things, as follows: 1. "If the defendants show badges of fraud, casting suspicion on the transaction, then the burden of proof shifts, and it devolves on the plaintiffs to explain those badges of fraud, and show the *bona fides* of the sale." 2. "It is sufficient to show that the natural result of the sale was to hinder, delay and defraud the creditors of Terrell & Vincent, in order to shift the burden of proof from the defendants to the plaintiffs on the question of fraud." 3. "If before the notes were paid, and while the plaintiffs were in a condition to put themselves *in statu quo*, the plaintiffs discovered the fraudulent intent of Terrell & Vincent in making the sale, and did not offer to rescind, and put themselves *in statu quo*, you may look to that, in connection with the other evidence, in determining what was their intent at the time of the sale, and whether they participated in the fraud." To each of these charges the plaintiffs excepted. They also duly excepted to the refusal of the court to give the following, among other charges, requested in writing by them: 2. "If the notes alleged to have been executed for the goods in question were payable one year from date, and payable to Terrell & Vincent,

[Shealy & Finn v. Edwards.]

or bearer, and have since been transferred by Terrell & Vincent in payment of debts to John Vincent and Malinda Vincent, then Shealy & Finn are bound for the payment of said notes ; and the fact that Shealy was, on the Monday afterwards, notified of Hardie's attachment, will be. no defense to a suit on them." 3. "If the evidence shows you that Shealy & Finn executed their notes in payment for goods, or a part thereof, and that Terrell & Vincent then turned the goods and house over to Shealy & Finn, saying 'now the goods are yours,' then it was a sale, and the title passed, even though the price of certain old goods remained to be agreed upon." 4. " A man or firm in failing circumstances has the right under the law, in good faith, to make a preference in paying his debts ; and this is true even though the effect of such *bona fide* preference be to leave other creditors without payment of any part of their demands ; and if you find from the evidence that Terrell & Vincent were indebted to John Vincent in the sum of $1750 or $2000 for borrowed money and for cotton, and were indebted to Miss Malinda Vincent in the sum of $1000 for borrowed money, then they, Terrell & Vincent, had the right to prefer those creditors and pay their indebtedness to them ; and if the evidence shows you that they did pay them by transferring to them the notes given by plaintiff in payment for the goods in controversy (if you find that such notes were executed and transferred), and did this in good faith, then there was no fraud, and the plaintiffs' title to the goods is valid, and your verdict should be in their favor for the proven value thereof." The plaintiffs also excepted to the following charges given, among others, at the defendant's request. 6. "If Shealy & Finn purchased the entire stock of goods from Terrrell & Vincent on credit for less than its value, and, at the time of such purchase, Terrell & Vincent were insolvent and owed debts, such sale to them would be a badge of fraud and [would] raise a violent presumption of a secret trust, and the transaction [should] be scrutinized more closely."

The rulings above noted are, among others, here assigned as error.

PARSONS & PARSONS and HEFLIN, BOWDON & KNOX, for appellants.

BROOKS & ROY, *contra*.

SOMERVILLE, J.—There was clearly no error in the refusal of the court to allow the plaintiffs to read to the jury the full itemized list of articles sold from the stock of merchandise in controversy on the day after they took possession under

their purchase from Terrell & Vincent. The question at issue was fraud *vel non* in the matter of the alleged sale. They had been allowed to prove the fact of possession, and the fact of sales being made by their clerk in due course of trade. These acts of dominion were relevant as tending to prove *bona fide* ownership. The particular items of sale were immaterial, and tended to prove nothing.

The objection interposed by the plaintiffs to the introduction of the attachment proceedings, and judgment rendered upon them in favor of Hardie against Terrell & Vincent, was entirely without merit. So the order of the court, authorizing the sale of the stock of goods by the sheriff, was clearly admissible. These judicial proceedings were in no sense *res inter alios acta*. They constituted the process under which the alleged trespass by the sheriff was sought to be justified. There was evidence tending to show the sale and purchase of the goods to be fraudulent, and if the jury was satisfied of the truth of this fact, the levy and sale made by the sheriff were fully authorized by law. The judgment was admissible to show that the inchoate lien created by the levy of the writ of attachment was perfected in the manner prescribed by law. It was not introduced to prove the existence of the debt on which it was based. This had been proved by other competent evidence. If the plaintiff desired to limit the effect of the judgment, it should have been done by requesting a proper charge to this end by the court.

It is a familiar principle that where the issue of fraud is involved, a greater latitude is allowed in the range of the evidence. To authorize a conveyance or sale made by a debtor to be pronounced fraudulent, two things must concur. The transaction must be shown to be infected with a fraudulent intent on the part of the grantor, and this must be participated in by the grantee. The first may be shown by the conduct and declarations of the grantor, so immediately connected with the transaction, as to throw light upon or illustrate its nature ; this evidence often consisting of a series of acts of more or less significance in their character, antecedent to, contemporaneous with, and even sometimes immediately subsequent to the principal fact. Unless, however, such acts or declarations are so intimately related to the principal fact, which is assailed as fraudulent, as to constitute a part of the *res gestæ* of such transaction, they are inadmissible as evidence against one claiming as a purchaser for value, unless shown to have been brought home to his knowledge prior to the purchase.—*Lehman v. Kelly*, 68 Ala. 192 ; *Moses v. Dunham*, 71 Ala. 173 ; 2 Brick. Dig. 18, § 71 ; *Foster v. Hall*, 22 Amer. Dec. 400.

The participation of the grantee in the fraud may be shown

by proving knowledge of any one or more of the facts sufficient to charge him with notice of the grantor's fraudulent intent. But it is obvious that this principle does not render it necessary to prove the grantee's knowledge of every particular act or declaration of the grantor going to constitute the alleged fraud. Such a requirement would render futile and impracticable all attacks upon fraudulent transfers, in perhaps ninety-nine out of every one hundred cases, in which it might be attempted to assail their validity. It would put a facile means within the reach of parties to destroy the force and admissibility of evidence by the artifice of management. Hence, the law does not require more than a knowledge of facts, which, however general in their nature, are sufficient to put the grantee on inquiry, by reasonably exciting a just suspicion in his mind as to the honesty or *bona fides* of the alleged fraudulent transaction.—*Lehman v. Kelly*, 68 Ala. 192, and cases cited. It is manifest that there may be cases where the fraudulent transfer of property made by the grantor to third persons, at or about the time of the main transaction, would be held admissible, even in the absence of a knowledge of such transaction on the part of the grantee, this being the settled doctrine of many of the courts.—Bump. on Fraud. Conv. (3d Ed.) 583–584, 591. But we are of opinion that the court erred, in the light of the above rules, in admitting evidence of the transfer by one of the grantors, several days after the sale made to the plaintiffs, of the notes taken for the purchase-money of the goods, which transfer he is shown to have made to his father and his sister, without the knowledge of the plaintiffs, and subsequent to their purchase of these goods. *Guidry v. Grivot*, 14 Amer. Dec. p. 195, NOTE.

A badge of fraud has been defined to be a fact which is calculated to throw suspicion upon a transaction, and calling for an explanation.—*Peebles v. Horton*, 64 N. C. 374. In *Terrell v. Green*, 11 Ala. 213, it was said to be an "inference drawn by experience from the customary conduct of mankind." These badges of fraud do not in themselves, or *per se*, constitute fraud, but are rather signs or *indicia* from which its existence may be properly inferred as matter of evidence. They are more or less strong or weak according to their nature and number concurring in the same case. They are as infinite in number and form as are the resources and versatility of human artifice. The present case presents numerous illustrations of many such badges, which are enumerated in the various rulings of the court, with explanations as to their legal force and effect, which seem correct except in one particular. The court erred in charging the jury as to the rule governing the burden of proof in such cases. The weight which is to be

given badges of fraud is a matter usually for the determination of the jury. "In some cases," as observed by a learned author, "fraud is *self-evident;* and when so, it is the proper province of the court to *adjudge* upon it."—Bigelow on Fr. p. 468. But it can not be asserted, as a general rule, that every thing which casts suspicion upon the good faith of a transaction, shifts the burden of proof upon the grantee or interested party, so as to require him to explain it, and that, in the absence of explanation, such transaction is necessarily to be pronounced fraudulent. There are numerous badges or *indicia* of fraud which might, although without explanation, entirely fail to satisfy the minds of a jury, that the transaction to which they relate had its origin in a fraudulent intent. There may be a suspicion, in other words, falling far short of satisfactory proof.

In this view of the law the first charge given by the court of its own motion was erroneous.

A debtor is not forbidden by law to make an honest preference of creditors in the payment of his debts, provided he does so without any intent to hinder or delay his creditors. *Crawford v. Kirksey,* 55 Ala. 282; *Warren v. Jones,* 68 Ala. 449. Such a transaction must be deemed valid if free from fraud. The fourth charge requested by the plaintiffs asserted this proposition in substance, and should have been given.

It was not sufficient to vitiate the sale that its natural result was to hinder, delay or defraud creditors, provided it was entirely free from all imputation of fraudulent intent. It is not impossible that the transaction may have had this effect, and yet have fully comported with honesty.— *Young v. Dumas,* 39 Ala. 60. The second charge given by the court seems to be inconsistent with this principle, and was misleading, if not erroneous.

The transfer of property by a failing or insolvent debtor, even though consummated with a fraudulent intent, is not for this reason void as between the immediate parties. The law pronounces such transactions invalid only at the instance of complaining creditors, whose legal rights have been prejudiced. The second charge requested by the plaintiffs was misleading on the ground that it assumed, in effect, that the same test would govern the validity of such transfers, whether the question arose between the immediate parties, or between the grantee and the creditors of the grantor.

The third charge requested by the plaintiff was properly refused. The principle of law announced in it is abstractly correct under the authority of the decision made in this cause when last before us on appeal.—*Shealy & Finn v. Edwards,* 73 Ala. 175. But in this case, as now presented, the main issue is one of fraud, and the charge, as framed, utterly ignores

[Scott v. Field.]

this consideration, upon which the entire case is made to turn.

The sixth charge, given at the request of the defendants, asserts the proposition that certain concurring badges of fraud, which are specially enumerated, would, taken together, raise a " violent presumption " of a secret trust, demanding a closer scrutiny of the transaction. We understand by a *violent presumption* one which is very strong and forcible, although not one which is necessarily conclusive or irrebutable—an inference which the law unhesitatingly requires to be drawn from given facts—a conclusion quite self-evident from the premises. Taking the phrase in this sense, we are inclined to think that it invaded the province of the jury, and was therefore erroneous.

The other rulings of the court are, in our opinion, free from error.

The judgment is reversed, and the cause remanded.